**LEASE**

**of the**

**METROPOLITAN WASHINGTON AIRPORTS**

**between**

**THE UNITED STATES OF AMERICA**

**acting by and through**

**THE SECRETARY OF TRANSPORTATION**

**and**

**THE METROPOLITAN WASHINGTON AIRPORTS AUTHORITY**

**ENTERED INTO AT WASHINGTON, DISTRICT OF COLUMBIA**
**THIS SECOND DAY OF MARCH,**
**1987**

# TABLE OF CONTENTS

## Metropolitan Washington Airports Lease

Article 1. Definitions. ..................................... Page 4
    1.A. Act ............................................. Page 4
    1.B. Airports ....................................... Page 4
    1.C. Airports Authority .............................. Page 4
    1.D. Airport Purposes ............................... Page 4
    1.E. Board of Directors ............................. Page 5
    1.F. Board of Review ................................ Page 5
    1.G. Employees ...................................... Page 5
    1.H. Leased Premises ................................ Page 5
    1.I. Master Plan .................................... Page 5
    1.J. Metropolitan Washington Airports ............... Page 6
    1.K. Secretary ...................................... Page 6
    1.L. Washington Dulles International Airport ......... Page 6
    1.M. Washington National Airport .................... Page 6

Article 2. Purpose. ....................................... Page 6

Article 3. Leased Premises. ............................... Page 7
    3.A. Grant of Lease. ................................ Page 7
    3.B. Scope. ......................................... Page 7
    3.C. Warranty of Title. ............................. Page 8
    3.D. Quiet Enjoyment. ............................... Page 8

Article 4. Transfer of Personal Property. ................. Page 8

Article 5. After Acquired Personal Property. .............. Page 9

Article 6. Title to Improvements. ......................... Page 9

Article 7. Maintenance and Care of Property. .............. Page 10

Article 8. Access To Premises. ............................ Page 10

Article 9. Effective Date. ................................ Page 10

Article 10. Term and Extensions. .......................... Page 11
    10.A. Term. ......................................... Page 11
    10.B. Lease Extensions. ............................. Page 11
    10.C. Good Faith Negotiation. ....................... Page 11
    10.D. Expiration. ................................... Page 11

Article 11. Continuing Obligations. ....................... Page 12
    11.A. Airports Authority's Legal Status. ............ Page 12
    11.B. Operation of Airports. ........................ Page 12
    11.C. Airport Improvement Program Requirements. ..... Page 12
    11.D. Contracts. .................................... Page 13
    11.E. Continuation of Regulations. .................. Page 13
    11.F. Limitations on Aircraft Operations. ........... Page 13

11.G. Assumption of Rights, Liabilities and
      Obligations. .................................. Page 14
11.H. Use of Certain Revenues. ....................... Page 15
11.I. General Aviation Fees. .......................... Page 16
11.J. Reporting Requirement. .......................... Page 16

Article 12. Capital Improvements. ......................... Page 16
12.A. Master Plans. .................................. Page 16
12.B. Improvement Schedule. .......................... Page 17

Article 13. Board of Review. .............................. Page 17
13.A. Establishment and Composition. ................ Page 17
13.B. Terms. ........................................ Page 18
13.C. Procedures. ................................... Page 19
13.D. Disapproval Procedure. ........................ Page 19
13.E. Request for Consideration of Other Matters. ... Page 20
13.F. Participation in Meetings of the Airports
      Authority. ................................... Page 20
13.G. Staff. ........................................ Page 20
13.H. Effect of Litigation. ......................... Page 20

Article 14. Employees. .................................... Page 21
14.A. Labor Agreements. .............................. Page 21
14.B. Employment Code. ............................... Page 21
14.C. Code of Ethics. ................................ Page 22
14.D. Access to Employees and Records. .............. Page 22

Article 15. Conditions Precedent. ......................... Page 23
15.A. Continued Employment Rights. ................... Page 23
15.B. Rights of Terminated Employees. ................ Page 24
15.C. Annual and Sick Leave. ......................... Page 25

Article 16. Payments. ..................................... Page 25
16.A. Lease Payments. ................................ Page 25
16.B. Retirement Obligations. ........................ Page 26
16.C. Delinquent Payments. ........................... Page 27

Article 17. Utilities. .................................... Page 28

Article 18. Planning. ..................................... Page 28
18.A. Dulles Main Terminal. .......................... Page 28
18.B. National Airport Skyline. ...................... Page 28

Article 19. Hold Harmless. ................................ Page 29

Article 20. Insurance Covenants and Risk Management
      Plans. ....................................... Page 29
20.A. Financing Risks of Loss. ....................... Page 29
20.B. Alternative Risk Management. ................... Page 30
20.C. Recovery and Restoration. ...................... Page 31
20.D. Initial Insurance. ............................. Page 31

Article 21. Use of Leased Premises. ....................... Page 31

Article 22. No Assignment. ............................... Page 32

Article 23. Defaults, Events of Defaults and Remedies. ... Page 32
    23.A. Defaults. ..................................... Page 32
    23.B. Events of Default. ............................ Page 33
    23.C. Remedies. ..................................... Page 33
    23.D. Rights and Remedies. .......................... Page 34

Article 24. Disputes. .................................... Page 34
    24.A. Litigation Procedure. ........................ Page 34
    24.B. Litigation Records. .......................... Page 35

Article 25. Audit. ....................................... Page 35

Article 26. Notices. ..................................... Page 35

Article 27. Lease Not Affected by Oral Agreement. ........ Page 36

Article 28. Law of Agreement. ............................ Page 36

Article 29. No Waiver. ................................... Page 37

Article 30. Captions. .................................... Page 37

Article 31. Partial Invalidity. .......................... Page 37

Article 32. Certificate of the Secretary. ................ Page 38

Article 33. Force Majeure. ............................... Page 39

Article 34. Inclusion of BWI not Precluded. .............. Page 39

Article 35. Memorandum of Lease. ......................... Page 40

<u>AGREEMENT</u>

<u>AND DEED OF LEASE</u>

<u>March 2, 1987</u>

Agreement and Deed of Lease between the United States of America, acting by and through the Secretary of Transportation ("the Secretary"), and the Metropolitan Washington Airports Authority ("the Airports Authority"), a public body politic and corporate created by compact between the Commonwealth of Virginia and the District of Columbia with the consent of the Congress.

WHEREAS, in the Metropolitan Washington Airports Act of 1986, Title VI of Public Law 99-591 ("the Act"), the Congress declared its purpose to be to authorize the transfer of operating responsibility under a long-term lease of the Metropolitan Washington Airport properties as a unit, including access highways and other related facilities, to a properly constituted independent airport authority created by the Commonwealth of Virginia and the District of Columbia, in order to achieve local control, management, operation, and development of these important transportation assets;

WHEREAS, the Act authorized the Secretary to enter into such a lease in order to enable the financing of badly needed capital improvements;

WHEREAS, in Chapter 598, Virginia Acts of Assembly, 1985, as it may be amended, and in the District of Columbia Regional Airports Authority Act of 1985, D.C. Law 6-67, as it may be amended, the Commonwealth of Virginia and the District of Columbia, respectively, enacted essentially identical laws to create the Airports Authority to acquire the Metropolitan Washington Airports from the United States, by lease or otherwise;

WHEREAS, the Congress has found that the two federally owned airports in the metropolitan area of Washington, District of Columbia constitute an important and growing part of the commerce, transportation and economic patterns of the Commonwealth of Virginia, the District of Columbia, and the surrounding region;

WHEREAS, the Congress has found that the Federal Government has a continuing but limited interest in the operation of the two federally owned airports serving the travel and cargo needs of the entire Metropolitan Washington region as well as the District of Columbia as the national seat of government;

WHEREAS, the Congress has found that operation of the Metropolitan Washington Airports by an independent local agency will facilitate timely improvements at both airports to meet the growing demand of interstate air transportation occasioned by the Airline Deregulation Act of 1978;

WHEREAS, the Congress has found that all other major air carrier airports in the United States are operated by public entities at the State, regional or local level;

WHEREAS, the Congress has found that any change in the status of the two airports must take into account the interest of nearby communities, the traveling public, air carriers, general aviation, airport employees, and other interested groups, as well as the interests of the Federal Government and the State governments involved;

WHEREAS, the Congress has found that an operating authority with representation from local jurisdictions, similar to authorities at all major airports in the United States, will improve communications with local officials and concerned residents regarding noise at the Metropolitan Washington Airports; and

WHEREAS, the Congress has found that the Federal interest in these airports can be provided through a lease mechanism which provides for local control and operation.

NOW THEREFORE, under the authority of the Metropolitan Washington Airports Act of 1986, Title VI of Public Law 99-591, 100 Stat. 3341; Chapter 598, Virginia Acts of Assembly, 1985, as it may be amended; and the District of Columbia Regional Airports Authority

4

Act of 1985, D.C. Law 6-67, as it may be amended; the parties do hereby agree as follows, for themselves and for their successors:

Article 1.   Definitions.

The following terms when used in this lease shall have the meanings indicated below:

1.A.   Act

The term "Act" means the Metropolitan Washington Airports Act of 1986, Title VI of Public Law 99-591, 100 Stat. 3341.

1.B.   Airports

The term "Airports" means the Metropolitan Washington Airports.

1.C.   Airports Authority

The term "Airports Authority" means the Metropolitan Washington Airports Authority, a public body created by the Commonwealth of Virginia and the District of Columbia.

1.D.   Airport Purposes

The term "Airport Purposes" means a use of property interests (other than a sale) for aviation business or activities, or for activities necessary or appropriate to serve passengers or cargo in air commerce, or for nonprofit, public use facilities.

1.E.  Board of Directors

The term "Board of Directors" means the Board of Directors of
the Airports Authority.


1.F.  Board of Review

The term "Board of Review" means the Board of Review of the
Airports Authority established by the Board of Directors.


1.G.  Employees

The term "Employees" means all permanent Federal Aviation
Administration personnel employed on the date this lease takes
effect by the Metropolitan Washington Airports, an organization
within the Federal Aviation Administration, U.S. Department of
Transportation.


1.H.  Leased Premises

The term "Leased Premises" means the real property described
in paragraph 3.A. hereof.


1.I.  Master Plan

The term "Master Plan" means a generalized, comprehensive
plan for the physical development of Washington National Airport
or Washington Dulles International Airport as may be revised from
time to time by the Airports Authority.

1.J.  Metropolitan Washington Airports

The term "Metropolitan Washington Airports" means Washington
National Airport and Washington Dulles International Airport.


1.K.  Secretary

The term "Secretary" means the Secretary of Transportation of
the United States, or her successor.


1.L.  Washington Dulles International Airport

The term "Washington Dulles International Airport" means the
airport constructed under the act entitled "An Act to authorize
the construction, protection, operation, and maintenance of a
public airport in or in the vicinity of the District of Columbia",
approved September 7, 1950 (64 Stat. 770), and includes the Dulles
Airport Access Highway and Right-of-way, including the extension
between the Interstate Routes I-495 and I-66.


1.M.  Washington National Airport

The term "Washington National Airport" means the airport
described in the act entitled "An Act to provide for the
administration of the Washington National Airport, and for other
purposes", approved June 29, 1940 (54 Stat. 686).


Article 2.  Purpose.

The purpose of this lease is to transfer the operating
responsibility for the Metropolitan Washington Airports to the
Metropolitan Washington Airports Authority pursuant to the Act and

7

to make the conditions imposed therein upon the authority of the Secretary to enter into a lease of the Metropolitan Washington Airports applicable to the Airports Authority.

## Article 3. Leased Premises.

### 3.A. Grant of Lease.

The Secretary, on behalf of the United States of America, hereby demises and leases to the Airports Authority the two Metropolitan Washington Airport properties as a unit, including access highways and other related facilities, being the parcels of land, together with all right, title and interest, if any, of the Secretary in and to any street or road abutting or included within the described land, and all rights of way, easements, licenses and permits relating thereto, and all improvements thereon, bounded and described in Appendix A.

### 3.B. Scope.

The Airports Authority is hereby authorized to occupy, operate, control and use, for the term of this lease, all land, improvements, buildings, fixtures, easements, rights of ingress and egress and appurtenances thereto belonging, owned by, used or controlled by or assigned to the United States of America on or at the Leased Premises. Subject to the provisions of this lease, the Airports Authority shall have, consistent with the 50-year minimum term of this lease, full power and dominion over, and complete discretion in, operations and development of the Airports, and shall have the same proprietary powers and be subject to the same

restrictions with respect to federal law as any other airport,
except as otherwise provided herein.


### 3.C.  Warranty of Title.

The Secretary hereby warrants and covenants on behalf of the
United States of America that the United States of America is the
owner of good, fee simple and marketable title to all of the
Leased Premises, free and clear of all liens, debts, encumbrances
or restrictions of whatsoever kind, nature and description, other
than leases and easements presently in effect that do not
adversely affect the operation of the Airports, and the Secretary
has full power and authority to convey the interests described in
this lease in accordance with the provisions hereof.


### 3.D.  Quiet Enjoyment.

The Secretary covenants on behalf of the United States of
America that, during the period commencing on the effective date
of this lease and ending on the expiration of the term of this
lease in accordance with the terms hereof, the Airports Authority
shall fully, peaceably and quietly occupy and enjoy the full
possession of the Leased Premises without hindrance or
interference by the Secretary or any other person or entity.


### Article 4.  Transfer of Personal Property.

The Secretary, on behalf of the United States of America,
hereby grants, transfers and conveys to the Airports Authority,
without condition (and not as a lease), all right, title and

interest in and to all equipment, materials, furnishings and all
other personal property appurtenant to or located on the Leased
Premises, excluding personal property necessary for the
Secretary's Air Traffic Control responsibilities, and including,
but not limited to, the items specifically described in the
inventory to be completed before the effective date of this lease
and identified as "Inventory for Metropolitan Washington
Airports."  Such personal property is transferred in "as is"
condition and the Secretary makes no warranties as to the
suitability of any such property for any particular use.

Article 5.  After Acquired Personal Property.

All personal property acquired by the Airports Authority
after the effective date of this lease shall vest in the Airports
Authority and shall not be subject to this lease.  All such
personal property so acquired and not essential to or regularly
used in the operations of the Metropolitan Washington Airports as
airports shall remain the property of the Airports Authority
following the expiration of the term of this lease and any
extensions thereto.

Article 6.  Title to Improvements.

All title to improvements made to or constructed on the
Leased Premises after the effective date of this lease shall vest
in the Airports Authority for the term of this lease and any
extensions thereto, subject to any mortgages, liens, or
assignments made by the Airports Authority.  Upon expiration of

this lease, title to said improvements shall pass to the United
States.  Such improvements shall not constitute additional rent
under this lease.

Article 7.  Maintenance and Care of Property.

The Airports Authority shall maintain the Leased Premises and
structures thereon in good condition for operation of the Airports
as operating airports, depreciation, obsolescence and ordinary
wear and tear excepted.  Notwithstanding any other provision of
this lease, but subject to Article 12 and paragraph 11.B., the
Airports Authority may alter the Leased Premises, demolish and
remove any improvement, including structures and fixtures, make
additional improvements and erect structures on the Leased
Premises.

Article 8.  Access To Premises.

The Secretary and her authorized representatives and agents
shall have the right to enter and view the Leased Premises at any
time during normal business hours, after reasonable notice, for
the purpose of assuring compliance with the terms of this lease.

Article 9.  Effective Date.

This lease shall be effective on the date on which the
Secretary and the Airports Authority certify that the Governor of
Virginia and the Mayor of the District of Columbia have approved
the lease and that all conditions in Articles 15 and 20 have been
satisfied.

Article 10.   Term and Extensions.

10.A.   Term.

The term of this lease shall be for fifty years commencing on the effective date as determined under Article 9.


10.B.   Lease Extensions.

The Secretary and the Airports Authority may at any time negotiate an extension of this lease.


10.C.   Good Faith Negotiation.

In the event that the Airports Authority reasonably shall determine that an extension of the term of this lease is required in order to entitle the Airports Authority to amortize the indebtedness that will result from the financing of any improvements at the Airports over a period equal to the estimated useful life of such improvements, the parties agree to negotiate in good faith a commensurate extension of such term.


10.D.   Expiration.

Upon the expiration of this lease, the Airports Authority covenants and agrees that it will give up, surrender and deliver to the Secretary the Leased Premises together with all buildings, structures and improvements thereon (as the same may have been altered or replaced), as well as all personal property, furniture, fixtures and other equipment contained therein and used exclusively in connection with the operation of the Airports, the intent being that when the Leased Premises are returned to the

Secretary, such Leased Premises shall be in good condition as operating airports, depreciation, obsolescence, and ordinary wear and tear excepted, all of which shall be free and clear of any and all liens, debts or encumbrances which would necessitate payment by the Secretary.

Article 11.   Continuing Obligations.

   11.A.   Airports Authority's Legal Status.

   The Airports Authority is a public body corporate and politic that meets the requirements of section 6007 of the Act.   The Airports Authority agrees to refrain from action that would alter such status and to use its best efforts to maintain this status.

   11.B.   Operation of Airports.

   The Airports Authority shall operate, maintain, protect, promote, and develop the Metropolitan Washington Airports as a unit and as primary airports serving the Metropolitan Washington area.

   11.C.   Airport Improvement Program Requirements.

   The Airports Authority shall be subject to the requirements of section 511(a) of the Airport and Airway Improvement Act of 1982 (hereinafter the "1982 Act") and the assurances and conditions required of grant recipients under the 1982 Act as of the date the lease takes effect, to the same extent as would be an airport that received a grant under the 1982 Act on the effective date of this lease.   As in the case of any other airport, any such

assurance which, by its terms, is project specific shall apply
only to projects on which Federal grant funds are expended.
Notwithstanding section 511(a)(12) of the 1982 Act, all revenues
generated by the Metropolitan Washington Airports shall be
expended for the capital and operating costs of the Airports.

### 11.D.  Contracts.

In acquiring by contract supplies or services for an amount
estimated to be in excess of $200,000, or awarding concession
contracts, the Airports Authority shall obtain, to the maximum
extent practicable, full and open competition through the use of
published competitive procedures.  By a vote of seven members, the
Airports Authority may grant exceptions to the requirements of
this paragraph.

### 11.E.  Continuation of Regulations.

All regulations applicable to the Metropolitan Washington
Airports and included in Part 159 of the Federal Aviation
Regulations, 14 C.F.R. Part 159, on the effective date of this
lease shall become regulations of the Airports Authority on that
date and shall remain in effect until modified or revoked by the
Airports Authority in accordance with procedures of the Airports
Authority.

### 11.F.  Limitations on Aircraft Operations.

(1)  The Airports Authority shall not increase or
decrease the number of instrument flight rule takeoffs and

landings authorized by the High Density Rule (14 C.F.R. 93.121 et seq.) at Washington National Airport as in effect on October 18, 1986, and shall not, after the effective date of this lease, impose a limitation on the number of passengers taking off or landing at Washington National Airport.

(2)  The Airports Authority agrees that any action changing or having the effect of changing the hours of operation of or the type of aircraft serving either of the Metropolitan Washington Airports may be taken only by adoption of or amendment to regulations of the Airports Authority.

11.G.  <u>Assumption of Rights, Liabilities and Obligations</u>.

(1)  <u>In General</u>.  Except as provided in subparagraph 2 of this paragraph, the Airports Authority hereby agrees that it shall assume all rights, liabilities, and obligations (tangible and incorporeal, present and executory) of the Secretary with respect to the Metropolitan Washington Airports organization of the Federal Aviation Administration on the effective date of this lease, including leases, permits, licenses, contracts, agreements, claims, tariffs, accounts receivable, accounts payable, and litigation relating to such rights and obligations, regardless whether judgment has been entered, damages awarded, or appeal taken.  To the extent practicable, the Secretary shall provide at the effective date of this lease a summary list of the foregoing which involve material obligations.

(2)  <u>Exceptions</u>.  The procedure for disputes resolution contained in any contract entered into on behalf of the United

States before the effective date of this lease shall continue to govern the performance of the contract unless otherwise agreed to by the parties to the contract. Claims for monetary damages founded in tort, by or against the United States as the owner and operator of the Metropolitan Washington Airports, arising before the date the lease takes effect shall be adjudicated as if the lease had not been entered into.

(3) <u>Payments Into Employee Compensation Fund</u>. The Federal Aviation Administration, and not the Airports Authority, shall be responsible for reimbursing the Employees' Compensation Fund, pursuant to section 8147 of title 5, United State Code, for compensation paid or payable after the effective date of this lease in accordance with chapter 81 of title 5, United States Code, with regard to any injury, disability, or death due to events arising before such date, whether or not a claim has been filed or is final on such date.

11.H.  <u>Use of Certain Revenues</u>.

No landing fee imposed for operating an aircraft or revenues derived from parking automobiles --

(1)  at Washington Dulles International Airport may be used for maintenance or operating expenses (excluding debt service, depreciation, and amortization) at Washington National Airport; or

(2)  at Washington National Airport may be used for maintenance or operating expenses (excluding debt service,

depreciation, and amortization) at Washington Dulles International Airport.

### 11.I. General Aviation Fees.

The Airports Authority shall compute the fees and charges for landing general aviation aircraft at the Metropolitan Washington Airports on the same basis as the landing fees for air carrier aircraft, except that the Airports Authority may require a minimum landing fee not in excess of the landing fee for aircraft weighing 12,500 pounds.

### 11.J. Reporting Requirement.

The Airports Authority agrees to provide annually to the Secretary a written report of any demolition during the previous year of structures conveyed under this lease.

## Article 12. Capital Improvements.

### 12.A. Master Plans.

The Airports Authority shall assume responsibility for the Federal Aviation Administration's Master Plans for the Metropolitan Washington Airports, including the adoption of the Dulles Master Plan and the completion of a Master Plan for Washington National Airport, and may revise such Master Plans from time to time or adopt subsequent Master Plans for the development of the Airports.  Major improvements to the Airports shall be consistent with the most recently adopted Master Plans.

12.B.  <u>Improvement Schedule</u>.

The Airports Authority acknowledges its intent, to the extent
practicable, to:

(1) pursue the improvement, construction and
rehabilitation of the facilities at Washington Dulles
International Airport and Washington National Airport
simultaneously; and

(2) cause the improvement, construction, and
rehabilitation proposed by the Secretary to be completed at both
of such Airports within five years of the earliest date on which
the Airports Authority issues bonds or other long-term evidences
of indebtedness.


Article 13.  <u>Board of Review</u>.

13.A.  <u>Establishment and Composition</u>.

Before taking any actions listed in paragraph 13.D. of this
Article, the Board of Directors shall establish a nine-member
Board of Review of the Airports Authority and appoint to it
representatives of the users of the Metropolitan Washington
Airports who will serve in their individual capacities.  The Board
of Directors shall appoint:

(1)  two members of the Public Works and Transportation
Committee and two members of the Appropriations Committee of the
U.S. House of Representatives from a list or lists of recommended
appointees provided by the Speaker of the House;

(2)  two members of the Commerce, Science, and
Transportation Committee and two members of the Appropriations

Committee of the U.S. Senate from a list or lists of recommended
appointees provided by the President pro tempore of the U.S.
Senate; and

       (3) one member chosen alternately from a list provided
by the Speaker of the House or the President pro tempore of the
Senate, respectively.

The members of the Board of Review shall elect a chairman. The
Board of Directors may not appoint a member of the House of
Representatives or the Senate from Maryland or Virginia, or the
Delegate from the District of Columbia, to the Board of Review.

    13.B. Terms.

    Members of the Board of Review appointed under subparagraphs
(1) and (2) of paragraph 13.A. above shall be appointed for six
years, except that of the members first appointed, one member
under each of subparagraphs (1) and (2) shall be appointed for a
term of two years and one member under each of subparagraphs (1)
and (2) shall be appointed for a term of four years. Members of
the Board of Review appointed under subparagraph (3) of paragraph
13.A. shall be appointed for terms of two years. A vacancy in the
Board of Review shall be filled in the same manner in which the
original appointment was made. Any member appointed to fill a
vacancy before the expiration of the term for which his or her
predecessor was appointed shall be appointed only for the
remainder of such term.

13.C.  Procedures.

The Board of Review shall establish procedures for conducting its business.  The procedures may include requirements for a quorum at meetings and for proxy voting.  The Board of Review shall meet at least once each year and shall meet at the call of the chairman or three members of the Board.  Any decision of the Board of Review under paragraph 13.D. or 13.F. shall be by a vote of five members.

13.D.  Disapproval Procedure.

The Board of Directors shall submit the following actions to the Board of Review at least thirty days (or at least sixty days in the case of the annual budget) before they are to become effective:

(1) the adoption of an annual budget;

(2) the authorization for the issuance of bonds;

(3) the adoption, amendment, or repeal of a regulation;

(4) the adoption or revision of a Master Plan, including any proposal for land acquisition; and

(5) the appointment of the chief executive officer.

If the Board of Review does not disapprove an action within thirty days of its submission under this Article, the action may take effect.  If the Board of Review disapproves any such action, it shall notify the Board of Directors and shall give reasons for the disapproval, and that action shall not take effect.  Unless an annual budget for a fiscal year has taken effect in accordance with paragraph 13.D., the Airports Authority shall not obligate or

expend any money in such fiscal year, except for (1) debt service
on previously authorized obligations, and (2) obligations and
expenditures for previously authorized capital expenditures and
routine operating expenses.

13.E.  Request for Consideration of Other Matters.

The Board of Review may request the Board of Directors to
consider and vote, or to report, on any matter related to the
Metropolitan Washington Airports.  Upon receipt of such a request
the Board of Directors shall consider and vote, or report, on the
matter as promptly as feasible.

13.F.  Participation in Meetings of the Airports Authority.

Members of the Board of Review shall be permitted to
participate as nonvoting members in meetings of the Board of
Directors.

13.G.  Staff.

The Board of Review may hire two staff persons to be paid by
the Airports Authority.  The Airports Authority shall provide such
clerical and support staff as the Board of Review may require.
All such staff shall be employees of the Airports Authority.

13.H.  Effect of Litigation.

The Airports Authority agrees that if the Board of Review is
unable to carry out its functions described in this Article by
reason of a judicial order, the Airports Authority will not take

any action that must be submitted to the Board of Review under paragraph 13.D. above.


Article 14.  Employees.

    14.A.  Labor Agreements.

The Airports Authority shall adopt all labor agreements which are in effect on the effective date of this lease.  Such agreements shall continue in effect for the five-year period commencing on such date, unless the agreement provides for a shorter duration or the parties agree to the contrary before the expiration of that five-year period.  Such agreements shall be renegotiated during the five-year period, unless the parties agree otherwise.  Any labor-management negotiation impasse declared before the date the lease takes effect shall be settled in accordance with chapter 71 of title 5, United States Code.  Any labor agreements shall provide for the continuation of all collective bargaining rights enjoyed by the Employees before the effective date.


    14.B.  Employment Code.

The Airports Authority shall adopt and maintain an employment code to assure (1) that the Airports Authority and all its transferring Employees, have the same rights and limitations with respect to labor agreements as the Federal Aviation Administration and its Employees enjoyed on October 18, 1986, and (2) that the employees of the Airports Authority are subject to the employment

limitations of 5 U.S.C. Chapter 73, Subchapter II to the same extent as Employees were on October 18, 1986.

14.C.  Code of Ethics.

The Airports Authority shall develop a code of ethics and financial disclosure in order to assure the integrity of all decisions made by its Board of Directors, Board of Review, and employees.  At a minimum, the code shall provide that members of the boards and their immediate families may not be employed by or otherwise hold a substantial financial interest in any enterprise that has or is seeking a contract or agreement with the Airports Authority or is an aeronautical, aviation services, or airport services enterprise that otherwise has interests that can be directly affected by the Airports Authority.  Exceptions to requirements of the preceding sentence may be made by the official or officials appointing a member at the time the member is appointed, if the financial interest is fully disclosed and so long as the member does not participate in board decisions that directly affect such interest.  The Airports Authority shall include in its code developed under this paragraph the standards by which members will determine what constitutes a substantial financial interest and the circumstances under which an exception may be granted.

14.D.  Access to Employees and Records.

The Airports Authority shall allow representatives of the Secretary and the Attorney General of the United States adequate

access to employees and records of the Airports Authority when
needed for the performance of functions related to the period
before the effective date of this lease.  The Secretary shall
provide the Airports Authority access to employee records of
transferring Employees for appropriate purposes.


Article 15.  Conditions Precedent.

The Airports Authority agrees that, prior to and as a
condition of this lease becoming effective, the Airports Authority
shall fulfill to the reasonable satisfaction of the Secretary each
of the following, which shall be independent conditions precedent
to this lease:


15.A.  Continued Employment Rights.

The Airports Authority shall establish arrangements to
protect the employment interests of Employees during the five-year
period beginning on the date this lease takes effect.  These
arrangements shall include provisions:

(1)  to ensure that the Airports Authority will adopt
labor agreements in accordance with provisions described in
paragraph 14.A.;

(2)  for the transfer and retention of all Employees who
agree to transfer to the Airports Authority in their same
positions for the five-year period commencing on the date this
lease takes effect, except in cases of reassignment, separation
for cause, resignation, or retirement;

(3)   for payment by the Airports Authority of basic and premium pay to transferred Employees, except in cases of separation for cause, resignation, or retirement, for five years commencing on the date this lease takes effect at or above the rates of pay in effect for such Employees on such date;

(4)   for credit during the five-year period commencing on the date this lease takes effect for accrued annual and sick leave and seniority rights which have been accrued during the period of federal employment by transferred Employees retained by the Airports Authority; and

(5)   for an offering of not less than one life insurance and three health insurance programs for transferred Employees retained by the Airports Authority during the five year period beginning on this date the lease takes effect which are reasonably comparable with respect to employee premium cost and coverage to the Federal health and life insurance programs available to Employees on the day before such date.

15.B.   Rights of Terminated Employees.

The Airports Authority shall establish a program to provide that any Employee transferring from the Federal Aviation Administration to the Airports Authority whose employment with the Airports Authority is terminated during the five-year period beginning on the date this lease takes effect shall have rights and benefits provided by the Airports Authority that are similar to those that such Employee would have had under Federal law if

termination had occurred immediately before the effective date of
this lease.

15.C.   Annual and Sick Leave.

The Airports Authority shall credit any Employee who
transfers to the Airports Authority with that Employee's unused
annual leave balance under section 5551 of title 5, United States
Code, on the date this lease takes effect, along with any unused
sick leave balance on such date.  During the five year period
beginning on such date, annual and sick leave shall be earned at
the same rates permitted on the day before such date, and observed
official holidays shall be the same as those specified in section
6103 of title 5, United States Code.

Article 16.   Payments.

16.A.   Lease Payments.

The Airports Authority shall pay an annual rental to the
account of the United States Treasury.  For the first year of this
lease, such annual rental shall be $3,000,000.  Subsequent annual
rental payments shall be adjusted as of each anniversary of the
effective date of this lease so as to equal $3,000,000.00 in 1987
dollars by applying the Implicit Price Deflator for the Gross
National Product published by the Department of Commerce in the
March edition of the Survey of Current Business, or the
appropriate successor index, as determined by the Secretary of
Commerce.  The parties may renegotiate the level of lease payments
attributable to inflation costs every ten years.  Lease payments

shall be made from any moneys of the Authority legally available
for such purpose, after the Authority shall have first
(i) satisfied its contractual obligations in respect of debt
service on its bonds and other indebtedness and (ii) paid or set
aside the amounts required for payment of the operating and
maintenance expenses of the Airports.  Subject to the foregoing,
the Airports Authority shall make lease payments in semiannual
installments commencing six months after the effective date of
this lease.  At the end of each month, the Airports Authority
shall direct available funds into a reserve of the Airports
Authority for purposes of making such lease payments, intended to
accumulate on as equal a basis as possible the amounts due on the
next lease payment date, which reserve shall be deposited in
interest-bearing accounts or investments selected by the Airports
Authority, with the rent payment and the interest actually accrued
on the reserve account to be payable to the Treasury on the next
lease payment date.


16.B.  Retirement Obligations.

     (1)  Not later than one year after the effective date of
this lease, the Airports Authority shall pay to the account of the
United States Treasury an amount determined by the Office of
Personnel Management to represent the actual added costs incurred
by the Civil Service Retirement and Disability Fund due to
discontinued service retirement under section 8336(d)(1) of
Title 5, United States Code, of Employees who elect not to
transfer to the Airports Authority.

(2)   Not later than one year after the effective date of this lease, the Airports Authority shall pay to the Treasury of the United States an amount determined by the Office of Personnel Management to represent the present value of the difference between (a) the future cost of benefits payable from the Civil Service Retirement and Disability Fund and due the Employees covered under section 6008(e) of the Act that are attributable to the period of employment following the effective date of this lease, and (b) the contributions made by the Employees and the Airports Authority under section 6008(e) of the Act.   In determining the amount due, the Office of Personnel Management shall take into consideration the actual interest such amount can be expected to earn when invested in the Treasury of the United States.

16.C.   Delinquent Payments.

In the event payments under this lease are delinquent so as to constitute an Event of Default under subparagraph B.(1) of Article 23, the Secretary may, in addition to other rights available under this lease, assess interest at the Treasury Current Value of Funds Rate as prescribed by the Secretary of the Treasury on the date payment was due.   In addition to this interest, penalty charges not to exceed six percent per year shall be assessed on any portion of a payment which is over 90 days past delinquent.   Penalty charges shall accrue from the date the payment became delinquent and shall continue to accrue until

payment is received.  Delinquent payments may be collected by administrative offset whenever possible.

Article 17. Utilities.

Except as otherwise provided in subleases of facilities to her, the Secretary shall not provide and hereby disclaims and is released from any and all responsibilities for the adequate provision of, payment for, maintenance of, and/or operation of utilities used in the operation and maintenance of the Airports, but at the effective date of the lease shall turn over to the Airports Authority all easements, licenses, permits and agreements relating to utilities then available to the Airports.

Article 18.  Planning.

18.A.  Dulles Main Terminal.

The Airports Authority shall consult with the National Capital Planning Commission and the Advisory Council on Historic Preservation before undertaking any major alterations to the exterior of the main terminal at Washington Dulles International Airport.

18.B.  National Airport Skyline.

The Airports Authority shall consult with the National Capital Planning Commission before undertaking development that would alter the skyline of Washington National Airport when viewed from the opposing shoreline of the Potomac River or from the George Washington Parkway.

Article 19.   Hold Harmless.

To the extent permitted by applicable law, the Airports Authority shall indemnify, defend, and hold harmless the Secretary, her agents and employees, from any and all claims, liability, damage and expense incurred by reason of death, injury, loss or damage of or to persons or property arising out of the Airport Authority's operation, use and occupancy of the Metropolitan Washington Airports after the effective date of this lease.  As between the parties hereto, the Airports Authority assumes all risk and liability for itself, its agents, employees, or contractors for any injury to persons or property resulting in any manner from the conduct of its operations, and the operations of its agents, or employees, and for any loss, cost, damage or expense resulting at any time from any cause due to any act or acts, negligence, or the failure to exercise proper precautions, of or by itself or its agents, or its employees, while occupying or operating the Metropolitan Washington Airports.  Nothing herein shall be construed to indemnify the Secretary, her agents and employees for claims, liability, damage and expense arising in whole or in part from their own negligent or intentional acts or omissions.

Article 20.  Insurance Covenants and Risk Management Plans.

20.A.  Financing Risks of Loss.

Commencing with the effective date of this lease, the Airports Authority shall adopt and maintain a risk financing plan for property and casualty losses which shall address such risks,

30

damages, and losses at the Leased Premises as are customarily
insured against by enterprises of a similar nature.


20.B.  Underline Alternative Risk Management.

The Airports Authority may adopt alternative risk management
programs in accordance with this paragraph.

     (1)  Risk Retention

The Airports Authority shall be entitled to retain all
or a portion of its risk of loss on a per occurrence and/or
aggregate basis.  The funding for retained losses shall be
determined in consultation with an independent, qualified actuary.

     (2)  Risk Transfer

The Airports Authority shall be entitled to transfer all
or a portion of its risk of loss to commercial insurers.  The
structure of such insurance shall be determined in consultation
with an independent, qualified risk management consultant.

     (3)  Group Risk Financing

The Airports Authority may participate in group risk
financing programs including sponsored insurance programs, risk
pools, risk retention groups, purchasing groups, and captive
insurance companies, and any state or federal insurance programs.
The Airports Authority shall consult with an independent qualified
risk management consultant prior to participating in any group
risk financing program.

20.C.  Recovery and Restoration.

Should a loss occur to the Leased Premises which is covered by the insurance or risk management plans as provided in this Article, the Airports Authority shall promptly take all prudent actions necessary to recover upon the appropriate policy or policies, plan or plans, and shall apply all proceeds thereof toward the restoration or replacement of the affected Leased Premises, where appropriate, and otherwise toward compliance with the obligations of the Airports Authority under the terms of this lease.

20.D.  Initial Insurance.

The Airports Authority shall obtain and have in force reasonable amounts of coverage by the effective date of this lease on the basis of binders or other interim commitments, and shall provide the Secretary with a list of such commitments.  Within 60 days after the effective date of this lease, the Airports Authority shall provide the Secretary with a list of replacement lines of insurance.

Article 21.  Use of Leased Premises.

In accordance with the terms of this lease, the Airports Authority may utilize the Leased Premises for Airport Purposes only.  The Leased Premises are provided in "as is" condition and the Secretary makes no warranties as to the suitability of any facility or equipment for any particular use.

Article 22.  <u>No Assignment</u>.

The Airports Authority shall not, through assignment of this lease or otherwise, substitute any other person for the Airports Authority as the party obligated as the tenant under this lease. Notwithstanding the foregoing, the Airports Authority shall be entitled from time to time and in its discretion to create easements, grant licenses, and sublease portions of the Leased Premises for use by subtenants, for purposes consistent with, and subject to the provisions of, this lease.  No such sublease shall relieve the Airports Authority from any of its obligations pursuant to this lease.

Article 23.  <u>Defaults, Events of Defaults and Remedies</u>.

23.A.  <u>Defaults</u>.

Each of the following shall constitute a default by the Airports Authority:

(1)  failure by the Airports Authority to pay when due any lease payment required to be made by Article 16 hereof;

(2)  use of the Leased Premises for other than Airport Purposes; and

(3)  breach by the Airports Authority of any provision, other than those covered above, of this lease.

23.B.  Events of Default.

Each of the following shall constitute an Event of Default:

(1)  the continuation of a default described in subparagraph A.(1) of this Article for 30 days after the due date of such payment;

(2)  the continuation of a default described in subparagraph A.(2) of this Article for 30 days after the receipt by the Airports Authority of a written notice from the Secretary specifying the claimed default, the affected portion of the Leased Premises, and the nature of the uses asserted not to be for Airport Purposes, provided that no Event of Default shall occur if the Airports Authority shall in good faith have commenced, within such 30 day period, to remedy such default and shall diligently and continuously proceed to cure such default; or

(3)  the continuation of a default described in subparagraph A.(3) of this Article for 30 days after the receipt by the Airports Authority of a written notice from the Secretary specifying the claimed default, provided that no Event of Default shall occur if the Airports Authority shall in good faith have commenced, within such 30 day period, to remedy such default and shall diligently and continuously proceed to cure such default.


23.C.  Remedies.

Upon the occurrence and during the continuation of any Event of Default

(1) described in subparagraph B.(1) or B.(3), of this Article, the Secretary may request the Attorney General to bring

an appropriate action to compel the Airports Authority and its officers and employees to comply with the terms of this lease, and

(2) described in subparagraph B.(2) of this Article, the Secretary shall (a) direct that appropriate measures be taken by the Airports Authority to bring the use of such portion of the Leased Premises in conformity with Airport Purposes, and (b) retake possession of such portion of Leased Premises if the Airports Authority fails to bring the use of such portion into a conforming use within a reasonable period of time, as determined by the Secretary.

### 23.D.  Rights and Remedies.

The rights and remedies of the Secretary in this Article are exclusive of any other rights and remedies.

### Article 24.  Disputes.

### 24.A.  Litigation Procedure.

Under section 6005(e) of the Act, the district courts of the United States shall have jurisdiction to compel the Airports Authority and its officers and employees to comply with the terms of this lease.  An action may be brought on behalf of the United States by the Attorney General, or by any aggrieved party.  An action to enforce the terms and conditions of this lease may also be brought on behalf of the Airports Authority in a district court of the United States.

Except as a court may order or the parties to this lease may otherwise agree in writing, pending resolution of any action under

this Article, the parties shall proceed diligently with
performance of all obligations under this lease.


24.B.  Litigation Records.

Records relating to matters litigated under this Article or
to litigation or the settlement of claims arising under or
relating to this lease shall be retained until such litigation
(including any appeals) or claims are disposed of.


Article 25.  Audit.

The Comptroller General of the United States, or a duly
authorized representative from the General Accounting Office, may
conduct periodic audits of the activities and transactions of the
Airports Authority in accordance with generally accepted
management principles and under such rules and regulations as may
be prescribed by the Comptroller General.  Any such audit shall be
conducted at such place or places as the Comptroller General or
his representative deems appropriate.  All books, accounts,
records, reports, files, papers, and property of the Airports
Authority shall remain in the possession and custody of the
Airports Authority.  The Airports Authority shall make available
at all reasonable times the records described in this paragraph
for examination, audit or reproduction.


Article 26.  Notices.

Notices to the Secretary shall be sufficient if sent by
certified mail, return receipt requested, postage prepaid,

addressed to the Secretary of Transportation, Washington D.C.
20590.  Notices to the Airports Authority shall be sufficient if
sent by certified mail, return receipt requested, postage prepaid,
addressed to the Metropolitan Washington Airports Authority,
Hangar 9, Washington National Airport, Washington, D.C. 20001.
Each party may designate by notice in writing a new address to
which any notice may thereafter be so given.  Each notice which is
mailed in the manner described above shall be deemed sufficiently
given, served, sent and received for all purposes at such time as
it is delivered to the addressee (with the return receipt being
deemed conclusive evidence of such delivery) or at such time as
delivery is refused by the addressee upon presentation.


Article 27.  <u>Lease Not Affected by Oral Agreement</u>.

No oral statement of any person shall modify or otherwise
affect the terms, conditions, or limitations stated in this lease.
All modifications to this lease must be made in writing by the
Secretary and the Airports Authority or their authorized
representatives.


Article 28.  <u>Law of Agreement</u>.

This lease shall be governed by and construed in accordance
with federal law.  To the extent that the application of federal
law requires or permits the application or consideration of state
law, the parties agree that the law of the Commonwealth of
Virginia is most relevant to this lease and shall be applied or
considered.  The powers of the Secretary with respect to this

lease shall be construed in accordance with and governed by
Federal law, and the powers of the Airports Authority with respect
to this lease shall be construed in accordance with and governed
by Virginia law.


Article 29.  No Waiver.

No failure by either party to insist upon the strict
performance of any agreement, term, covenant or condition hereof
or to exercise any right or remedy consequent upon a breach
thereof, and no payment or acceptance of full or partial payments
during the continuance of any such breach, shall constitute a
waiver of any such breach or of such agreement, term, covenant or
condition.  No waiver of any breach shall affect or alter this
lease, but each and every agreement, term, covenant and condition
hereof shall continue in full force and effect with respect to any
other then-existing or subsequent breach thereof.


Article 30.  Captions.

The captions and headings in this lease are inserted only as
a matter of convenience and for reference, and they in no way
define, limit or describe the scope of this lease or the intent of
any provision thereof.


Article 31.  Partial Invalidity.

If any term or provision of this lease, or the application
thereof to any person or circumstance, shall to any extent be
determined by a court of competent jurisdiction to be invalid or

unenforceable, the remainder of this lease, or the application of such term or provision to persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each term and provision of the lease shall be valid and be enforced to the fullest extent permitted by law.

Article 32.   Certificate of the Secretary.

The Secretary agrees to execute and deliver to the Airports Authority and/or any other person or entity designated by the Airports Authority, at any time and from time to time, upon not less than 30 days' prior written notice by the Airports Authority (which notice shall state that the Airports Authority requires same in connection with a financing or other undertaking), a statement in writing:

(i)   certifying that this lease is unmodified and in full force and effect (or if there have been modifications, that the lease is in full force and effect as modified and stating the modifications);

(ii)   stating the dates to which lease payments and other charges hereunder have been paid by the Airports Authority;

(iii)   stating whether, to the best knowledge of the Secretary, the Airports Authority is in default in the performance of any covenant, agreement or condition contained in this lease, and if so, specifying the nature of such default; and

(iv)   stating the address to which notices to the Secretary are to be sent.

Any such statement delivered by the Secretary may be relied upon
by any lender, bond holder, trustee or other person proposing to
enter into agreements with the Airports Authority as an estoppel
of the Secretary's right to assert a position inconsistent with
such position.

Article 33.   Force Majeure.

In the event that either party to this lease is in any way
delayed, interrupted or prevented from performing any of its
obligations under this lease, and such delay, interruption or
prevention is due to fire, act of God or any other cause, whether
similar or dissimilar, beyond such party's reasonable control,
then the time for performance of the affected obligations by such
party shall be excused for the period of the delay and extended
for a period equivalent to the period of such delay, interruption
or prevention.

Article 34.   Inclusion of BWI not Precluded.

Nothing in this lease shall be construed to prohibit the
Airports Authority and the State of Maryland from entering into an
agreement whereby Baltimore/Washington International Airport may
be made part of a regional airports authority, subject to terms
and conditions agreed to by the Airports Authority, the Secretary,
the Commonwealth of Virginia, the District of Columbia, and the
State of Maryland.

Article 35.  Memorandum of Lease.

Upon the request of the Airports Authority, the Secretary agrees to execute, in recordable form, a short-form memorandum of this lease, which memorandum may be recorded at the Airports Authority's expense in appropriate land records.

ENTERED INTO THIS SECOND DAY OF MARCH, 1987

For the United States of America:

Elizabeth Hanford Dole
Secretary of Transportation

For the Metropolitan Washington Airports Authority:

A. Linwood Holton, Jr.
Chairman, Board of Directors

Subscribed and sworn to before me
this 2nd day of March, 1987.

Notary Public
My Commission Expires: Feb. 14, 1990

Metropolitan Washington Airports Lease

41

APPROVED, pursuant to section 3 of Chapter 598, Virginia Acts of Assembly, 1985 Session:


Gerald L. Baliles
Governor of Virginia


APPROVED, pursuant to section 4 of D.C. Law 6-67:


Marion Barry, Jr.
Mayor of the District of Columbia

Metropolitan Washington Airports Lease

Certification of Effective Date

In accordance with Article 9 of the Lease of the Metropolitan Washington Airports between the United States of America and the Metropolitan Washington Airports Authority as entered into on March 2, 1987 (the Lease), we hereby certify that: 1)  the Governor of Virginia and the Mayor of the District of Columbia have approved the Lease; 2)  all conditions in Articles 15 and 20 of the Lease have been satisfied; and 3)  the Lease shall be effective as of 12:01 a.m., June 7, 1987.

Executed this ⌣ day of June, 1987.

_____
Linwood Holton
Chairman, Board of Directors
Metropolitan Washington Airports Authority

Metropolitan Washington Airports Lease
Certification of Effective Date

In accordance with Article 9 of the Lease of the Metropolitan
Washington Airports between the United States of America and the
Metropolitan Washington Airports Authority as entered into on
March 2, 1987 (the Lease), I hereby certify that: 1) the Governor
of Virginia and the Mayor of the District of Columbia have
approved the Lease; 2) all conditions in Articles 15 and 20 of the
Lease have been satisfied; and 3) the Lease shall be effective as
of 12:01 a.m., June 7, 1987.


Executed this ___5___ day of June, 1987



Elizabeth Hanford Dole
Secretary of Transportation

AMENDMENT NO. 1

to the

LEASE

of the

METROPOLITAN WASHINGTON AIRPORTS

between

THE UNITED STATES OF AMERICA

acting by and through

THE SECRETARY OF TRANSPORTATION

and

THE METROPOLITAN WASHINGTON AIRPORTS AUTHORITY

WHEREAS, the Metropolitan Washington Airports Authority (the "Airports Authority") and the United States of America, acting by and through the Secretary of Transportation (the "Secretary"), entered into a lease dated March 2, 1987 (the "Lease"), whereby the Secretary leased to the Airports Authority Washington National Airport and Washington Dulles International Airport (the "Metropolitan Washington Airports") for a term of fifty (50) years, effective June 7, 1987;

WHEREAS, the Airports Authority has a continuing obligation to comply with the Act;

WHEREAS, The Act has been amended and it is necessary to clarify that the Airports Authority's obligation extends to the Act as amended;

IT IS NOW, THEREFORE, agreed that the Lease is amended as follows:

1.   In Article 1, Definitions, paragraph 1.A."Act" is amended by inserting at the end thereof, the words "as amended by Title VII of Public Law 102-240."

Metropolitan Washington Airports Lease
Amendment No. 1
Page 1 of 3

2.    In Article 11, paragraphs 11.A. through 11.J. are redesignated as paragraphs 11.B. through 11.K.

3.    In Article 11, add new paragraph 11.A. to read as follows:

"11.A.   <u>Obligation to Comply with the Act</u>.
The Airports Authority agrees to comply with the conditions imposed by the Act."

4.    Article 13 is deleted in its entirety.

All other provisions of the Lease shall remain unchanged.

ENTERED INTO THIS __30th__ DAY OF DECEMBER, 1991

For the United States of America:


_____
Admiral James B. Busey
Acting Secretary of
   Transportation

For the Metropolitan Washington Airports Authority:


_____
A. Linwood Holton, Jr.
Chairman, Board of Directors

Metropolitan Washington Airports Lease
Amendment No. 1
Page 2 of 3

APPROVED, pursuant to section 3 of Chapter 598, Virginia Acts of Assembly, 1985 Session:

_____

The Honorable L. Douglas Wilder
Governor of Virginia


APPROVED, pursuant to section 4 of D.C. Law 6-67:


_____

The Honorable Sharon Pratt Kelly
Mayor of the District of Columbia


Metropolitan Washington Airports Lease
Amendment No. 1
Page 3 of 3

APPROVED, pursuant to section 3 of Chapter 598, Virginia Acts of Assembly, 1985 Session:


_____
The Honorable L. Douglas Wilder
Governor of Virginia


APPROVED, pursuant to section 4 of D.C. Law 6-67:


_____
The Honorable Sharon Pratt Kelly
Mayor of the District of Columbia


Metropolitan Washington Airports Lease
Amendment No. 1
Page 3 of 3

# AMENDMENT NO. 2

to the

# LEASE

of the

# METROPOLITAN WASHINGTON AIRPORTS

between

# THE UNITED STATES OF AMERICA

acting by and through

# THE SECRETARY OF TRANSPORTATION

and

# THE METROPOLITAN WASHINGTON AIRPORTS AUTHORITY

## METROPOLITAN WASHINGTON AIRPORTS LEASE
## AMENDMENT NO. 2

WHEREAS, the Metropolitan Washington Airports Authority (the "Airports Authority") and the United States of America, acting by and through the Secretary of Transportation (the "Secretary"), entered into a lease dated March 2, 1987 (the "Lease"), whereby the Secretary leased to the Airports Authority, Ronald Reagan Washington National Airport and Washington Dulles International Airport (the "Metropolitan Washington Airports") for a term of fifty (50) years, effective June 7, 1987;

WHEREAS, the Airports Authority has under the Lease a continuing obligation to comply with the "Act" which is defined in the Lease as the Metropolitan Washington Airports Act of 1986 as amended by Public Law 102-240;

WHEREAS, the Act was further amended on October 9, 1996, by Title IX of Public Law 104-264 (Metropolitan Washington Airports Amendments Act of 1996), and the Secretary and the Airports Authority wish to modify the definition of "Act" in the Lease to clarify that the Airports Authority's obligation extends to the Act as amended in said Public Law and to make other conforming changes to the Lease;

IT IS NOW, THEREFORE, agreed that the Lease, as amended, is further amended as follows:

1.    In Article 1, "Definitions" paragraph. 1.A. "Act" as previously amended, is deleted in its entirety and, in place thereof, the following definition of "Act" is added:

Metropolitan Washington Airports Lease
Amendment No. 2
Page 2 of 4

"1.A. Act

The term "Act" means the Metropolitan Washington Airports Act of 1986, Title VI of Public Law 99-591, 100 Stat. 3341, as amended by Title VII of Public Law 102-240 and by Title IX of Public Law 104-264."

2.    In Article 1, Definitions, paragraph 1.D. "Airport Purposes" is amended by inserting before the period the words "which are not inconsistent with the needs of aviation."

3.    In Article 1, Definitions, paragraph 1.F. "Board of Review" is deleted.

All other provisions of the Lease remain unchanged.

ENTERED INTO THIS __28th__ DAY OF __September__ 1998

For the United States of America:                    For the Metropolitan Washington Airports Authority:

Rodney E. Slater                                             David T. Ralston, Jr.
Secretary of Transportation                           Chairman, Board of Directors

Metropolitan Washington Airports Lease
Amendment No. 2
Page 3 of 4

APPROVED, pursuant to section 3 Chapter 598, Virginia Acts of Assembly, 1985 Session:


_The Honorable James S. Gilmore III_
The Honorable James S. Gilmore III
Governor of Virginia


APPROVED, pursuant to section 4 of D.C. Law 6-67:


The Honorable Marion Barry, Jr.
Mayor of the District of Columbia

AMENDMENT NO. 3

To the

LEASE

of the

METROPOLITAN WASHINGTON AIRPORTS

Between

THE UNITED STATES OF AMERICA

acting by and through

THE SECRETARY OF TRANSPORTATION

and

THE METROPOLITAN WASHINGTON AIRPORTS AUTHORITY

METROPOLITAN WASHINGTON AIRPORTS LEASE

AMENDMENT NO. 3

WHEREAS, the Metropolitan Washington Airports Authority (the "Airports Authority") and the United States of America, acting by and through the Secretary of Transportation (the "Secretary"), entered into a lease dated March 2, 1987, effective June 7, 1987 (the "Lease"), whereby the Secretary leased to the Airports Authority Ronald Reagan Washington National Airport and Washington Dulles International Airport (the "Metropolitan Washington Airports") for a specified Term of years;

WHEREAS, 49 U.S.C. § 49104(d) and the Lease provide that its Term may be extended by agreement of the Secretary and Airports Authority;

WHEREAS, the Secretary and the Airports Authority have determined that the Term of the Lease should be extended to further the purposes of the Lease;

WHEREAS, the Airports Authority, subsequent to the effective date of the Lease, acquired or will acquire additional real property that is not Leased Premises to serve the needs of the Metropolitan Washington Airports, and the parties hereto wish to express their agreement as to the disposition of this property that is to occur at the expiration of the Lease as amended;

IT IS NOW, THEREFORE, AGREED that the Lease as amended is further amended as follows:

1.   Article 10, paragraph 10.A, "Term," shall hereafter be as follows:

     "The term of this Lease shall be for eighty years commencing on the effective date as determined under Article 9."

2.   Article 5, "After Acquired Personal Property," is renamed "After Acquired Property" and the existing paragraph under Article 5 is designated as paragraph "5.A. After Acquired Personal Property."

3.   New paragraph 5.B. is hereby added to the Lease as follows:

     "5.B. After Acquired Real Property.

     After Acquired Real Property consists of all interests in real property, including, but not limited to, all rights-of-way, easements, licenses and permits, acquired by the Airports Authority after the effective date of the

Lease, whether from the United States or any other party.  After Acquired Real Property is not Leased Premises.  The preceding notwithstanding, the Secretary and the Airports Authority agree that, when the Lease, as amended from time to time, expires and the Leased Premises are surrendered in accordance with paragraph 10. D. of this Lease, the Airports Authority will surrender and deliver to the Secretary all After Acquired Real Property that the Authority possesses at that time, to the extent of its interest therein, under the same terms as the Leased Premises."

ENTERED INTO THIS _30_ DAY OF _April_ 2003.

For the United States of America:

_____
Norman Y. Mineta
Secretary of Transportation

For the Metropolitan Washington Airports Authority:

_____
Norman M. Glasgow, Jr.
Chairman, Board of Directors

_____
James A. Wilding
President & Chief Executive Officer

Metropolitan Washington Airports Lease
Amendment No. 3
Page 2 of 3

APPROVED, pursuant to section 3, Chapter 598, Virginia Acts of Assembly, 1985 Session, as amended:


The Honorable Mark R. Warner
Governor of Virginia



APPROVED, pursuant to section 4 of D.C. Law 6-67, as amended:


The Honorable Anthony A. Williams
Mayor of the District of Columbia



Metropolitan Washington Airports Lease
Amendment No. 3
Page 3 of 3

AMENDMENT NO. 4

to the

LEASE

of the

METROPOLITAN WASHINGTON AIRPORTS

between

THE UNITED STATES OF AMERICA

acting by and through

THE SECRETARY OF TRANSPORTATION

and

THE METROPOLITAN WASHINGTON AIRPORTS AUTHORITY

WHEREAS, the Metropolitan Washington Airports Authority (the "Airports Authority") and the United States of America, acting by and through the Secretary of Transportation (the "Secretary"), entered into a lease dated March 2, 1987 (the "Lease"), whereby the Secretary leased to the Airports Authority Ronald Reagan Washington National Airport and Washington Dulles International Airport (the "Metropolitan Washington Airports") for a term of fifty (50) years, effective June 7, 1987, which term was extended for an additional thirty (30) years by Amendment No. 3 to the Lease, dated April 30, 2003; and

WHEREAS, the Airports Authority has a continuing obligation under the Lease to comply with the "Act," which is currently defined in the Lease as the Metropolitan Washington Airports Act of 1986, Title VI of Public Law 99-591, as amended by Title VII of Public Law 102-240 and by Title IX of Public Law 104-264; and

WHEREAS, the Act has been amended since the 104th Congress, including on February 14, 2012, by Titles I and IV of Public Law 112-95 (FAA Modernization and Reform Act of 2012), and the Secretary and the Airports Authority wish to modify the definition of "Act" in the Lease to clarify that the Airports Authority's obligation extends to the Act, as amended as of the execution date of this Amendment, and to make other conforming changes to the Lease; and

WHEREAS, the Secretary and the Airports Authority are committed to strengthening the content and oversight of the Airports Authority's internal policies and procedures, and the Secretary and the Airports Authority wish to modify the Lease to clarify the provisions related to Airports Authority policies and procedures and to make other conforming changes to the Lease;

IT IS NOW, THEREFORE, AGREED that the Lease, as amended, is further amended as follows:

1. Article 1, <u>Definitions</u>, paragraph 1.A. "Act," as previously amended, is amended by striking the word "and" between "Public Law 102-240" and "by Title IX," by inserting a comma after "Public Law 102-240", and by inserting after "Public Law 104-264" a comma and then the words "by Title II of Public Law 106-181, by Section 4, Division C of Public Law 112-55, and by Titles I and IV of Public Law 112-95".

2. Article 1, <u>Definitions</u>, paragraph 1.D. "Airport Purposes" is amended by inserting before the period a comma and then the words "or for a business or activity not inconsistent with the needs of aviation that has been approved by the Secretary".

3. Article 8, <u>Access to Premises</u>, is amended to insert, at the end of such Article 8, the following language: "The Airports Authority shall further provide the Secretary and her authorized representatives and agents full access at any time during normal business hours, after reasonable notice, to the Airports Authority's personnel, books, records, contracts, and documents for the purpose of assuring compliance with the terms of this Lease."

4. Article 11, <u>Continuing Obligations</u>, is amended to add a new paragraph 11.K. to read as follows: "<u>11.K. Airport Authority Policies and Procedures</u>. The Authority shall adopt, maintain and adhere to policies and procedures in the areas of procurement and contracting, human resources (including hiring and adverse action), budget (as relates to federal funds), travel, ethics, governance, and transparency (including open meetings and executive sessions). These policies and procedures should be substantially similar to those of similar public entities and should strive to reflect a standard of 'best practices.' The Authority shall develop these policies and procedures, and any amendments thereto, in consultation with the Secretary of Transportation or the Secretary's designee. Prior to the adoption of such policies and procedures, or amendments, the Authority shall obtain the concurrence of the Secretary or the Secretary's designee. The Authority shall adopt a new or revised policy in each of these areas within 12 months of the execution date of this Amendment. The parties agree that, prior to December 31, 2018, they will in good faith discuss whether this paragraph 11.K shall continue in effect following that date

and, if so, whether the paragraph should sunset on a specified future date; absent an agreement of the parties to the contrary, which is reflected in an amendment to this Lease, this paragraph 11.K shall continue in effect following December 31, 2018."

5. All other provisions of the Lease remain unchanged.

ENTERED INTO THIS 24 DAY OF ___January___, 2013.

For the United States of America:

Ray LaHood
Secretary of Transportation

For the Metropolitan Washington Airports
Authority:

Michael A. Curto
Chairman

Metropolitan Washington Airports Lease
Amendment No. 4
Page 4 of 5

Amendment No. 4 to the Lease of the Metropolitan Washington Airports
between the United States of America, acting by and through
the Secretary of Transportation, and the
the Metropolitan Washington Airports Authority

APPROVED, pursuant to section 3, Chapter 598, Virginia Acts of Assembly, 1985
Session:

_____

The Honorable Robert F. McDonnell
Governor of Virginia

APPROVED, pursuant to section 4 of D.C. Law 6-67:

_____

The Honorable Vincent C. Gray
Mayor of the District of Columbia

Metropolitan Washington Airports Lease
Amendment No. 4
Page 5 of 5

AMENDMENT NO. 5

to the

LEASE

of the

METROPOLITAN WASHINGTON AIRPORTS

between

THE UNITED STATES OF AMERICA,

acting by and through

THE SECRETARY OF TRANSPORTATION,

and

THE METROPOLITAN WASHINGTON AIRPORTS AUTHORITY

METROPOLITAN WASHINGTON AIRPORTS LEASE
AMENDMENT NO. 5

WHEREAS, the Metropolitan Washington Airports Authority (the "Airports Authority") and the United States of America, acting by and through the Secretary of Transportation (the "Secretary"), entered into a lease, dated March 2, 1987, (the "Lease"), and effective June 7, 1987, whereby the Secretary leased to the Airports Authority Ronald Reagan Washington National Airport and Washington Dulles International Airport (the "Metropolitan Washington Airports"), within the boundaries of the Airports as described in the Lease (the "Lease Premises"), for a term of fifty (50) years, which term was extended for an additional thirty (30) years by Amendment No. 3 to the Lease, dated April 30, 2003; and

WHEREAS, 49 U.S.C. § 49104(d) and the Lease provide that the term of the Lease may be extended by agreement of the Secretary and the Airports Authority;

WHEREAS, the Secretary and the Airports Authority have determined that the term of the Lease should be extended by an another thirty-three (33) years, and therefore to an overall term of one hundred thirteen (113) years in order to advance the purposes of the Lease;

WHEREAS, the Secretary and the Airports Authority have also determined that, in order to further advance the purposes of the Lease and to enhance the ability of the Airports Authority to operate, improve and provide the required financing for capital construction at the Metropolitan Washington Airports, the Lease should be further amended: (i) to provide to the Airports Authority the opportunity, within a defined future period, to request the Secretary to extend the term of the Lease for all Lease Premises beyond 113 years, and, in addition, the opportunity to request the Secretary to extend the term of the Lease for specifically-defined portions of the Lease Premises within Washington Dulles International Airport or Washington National Airport, and (ii) to contain a commitment of the Secretary to give reasonable, timely and good-faith consideration to all such requests submitted by the Airports Authority and, when the consideration of any request is favorable, to extend the term of the leased land described in the request as the Secretary determines to be appropriate;

WHEREAS, the Secretary and the Airports Authority have further determined that the Lease currently contains provisions that have become outdated or are in need of updating, and that these provisions should be deleted from the Lease or appropriately updated;

IT IS NOW, THEREFORE, AGREED that the Lease, as amended, is further amended as follows:

1.   In Article 1, Definitions, paragraph 1.A. "Act" is deleted in its entirety and is replaced by a new paragraph 1.A. to read as follows:

1.A.   Act.

The term "Act" means the Metropolitan Washington Airports Act of 1986, Title VI of Public Law 99-500, 100 Stat. 1783-373, as reenacted by Title VI of Public Law 99-591, 100 Stat. 3341, as amended by Title VII of Public Law 102-240, 105 Stat. 2197, by Title IX of Public Law 104-264, 110 Stat. 3274, by Public Law 105-154, 112 Stat. 3, by Public Law 105-225, 112 Stat. 1511, by Title II of Public Law 106-181, 114 Stat. 112, by Public Law 107-217, 116 Stat. 1353, by Public Law 112-55, 125 Stat. 671, and by Titles I and IV of Public Law 112-95, 126 Stat. 32, 92, and as codified as positive law by Public Law 105-102, 111 Stat. 2205.

2.   In Article 3, <u>Leased Premises</u>, paragraph 3.B "Scope" is amended by deleting the phrase "50-year minimum".

3.   In Article 10, <u>Term and Extensions</u>, paragraph 10.A. "Term" is amended by deleting the phrase "eighty years" and replacing it with a new phrase to read "one hundred thirteen (113) years".

4.   In Article 10, <u>Term and Extensions</u>, the heading of paragraph 10.B., "Lease Extensions," is deleted and is replaced with a new heading to read as follows, and the content of paragraph 10.B. is transferred to a new subparagraph (1) of paragraph 10.B. to read as follows:

> 10.B.   <u>Extensions of Lease Term</u>.

> (1)   <u>Extensions of Term of Lease Premises – General</u>.

> The Secretary and the Airports Authority may at any time negotiate an extension of this Lease.

5.   In Article 10, <u>Terms and Extensions,</u> paragraph 10.B., is further amended by adding to it a new subparagraph (2) to read as follows:

> (2)   <u>Airports Authority Opportunity to Seek Extension of Term of Lease Premises</u>.

> (a)   The Airports Authority may, at any time within the period between January 1, 2040, and December 31, 2055, submit a written request to the Secretary to extend the term of the Lease Premises by the number of years stated in the request.

> (b)   The Secretary will give reasonable, timely and good-faith consideration to the Airports Authority's request and, if that consideration is favorable, will approve an extension of the lease term that the Secretary determines to be in interest of the Airports Authority and the airline carriers and traveling public utilizing the Airports, and consistent with the federal interest in the Airports.

> (c)   The Airports Authority will, in connection with any request it submits under this subparagraph (2), provide to the Secretary any information the Secretary deems necessary in order for a reasonable and good faith consideration to be given to the request.

> (d)   The provisions of this subparagraph (2) are not intended to have, or to be construed as having, any effect upon the interpretation or application of paragraph 10.B.(1).

6.   In Article 10, <u>Terms and Extensions</u>, paragraph 10.B., is further amended by adding to it a new subparagraph (3) to read as follows:

> (3)   <u>Airports Authority Opportunity to Seek Extensions of Term of Portions of Lease Premises</u>.

> (a)   The Airports Authority may, at any time between the date of Lease Amendment No. 5 and December 31, 2055 or the date of any further extension of the Lease obtained by the Authority pursuant to paragraph 10.B. (2) (whichever occurs earlier), submit a written request to the

Secretary to extend the lease term, by the number of years stated in the request, for any specifically-described segment or segments of Dulles or National Lease Land (defined below in subparagraph (3)(b)), whether vacant or improved, which the Authority intends to sublease in the future to one or more third-parties for a term extending beyond the expiration of the existing lease term.

(b)  Dulles or National Lease Land, for purposes of this Lease, means the leased land within the part of Washington Dulles International Airport which lies outside the Dulles Airport Access Highway and Right-of-Way or the leased land within the boundaries of Washington National Airport.

(c)  The Secretary will give reasonable, timely and good-faith consideration to each request submitted by the Airports Authority under this subparagraph (3) and, if that consideration is favorable, will approve a lease extension for the land segment or segments which the Secretary determines to be in the interest of the Airports Authority and the airline carriers and traveling public utilizing the Airports, and consistent with the federal interest in the Airports.

(d)  The Airports Authority will, in connection with any request it submits under this subparagraph (3), provide to the Secretary any information the Secretary deems necessary in order for a reasonable and good faith consideration to be given to the request.

(e)  In the event a lease term extension is approved by the Secretary for the Lease Premises under this paragraph 10.B(2), the Secretary and the Airports Authority may, at that time, also consider whether segments of Dulles or National Lease Land with extended lease terms previously approved by the Secretary under paragraph 10.B.(3) should be extended to match the extended term of the Lease Premises.

(f)  In the event the lease term applicable to Lease Premises in paragraph 10.A. expires prior to the expiration of the Lease term of a Dulles or National  Lease Land segment earlier extended by the Secretary under this subparagraph (3), the Secretary will not disturb the occupancy of the party subleasing the segment (or any part thereof) from the Airports Authority, or terminate the sublease between the party and the Airports Authority, for so long as the sublease is in full force and effect and the sublessee is not in default under the sublease.

(g)  The provisions of this subparagraph (3) are not intended to have, or to be construed as having, any effect upon the interpretation or application of lease paragraph 10.B.(1).

7.  In Article 10, Terms and Extensions, paragraph 10.D. "Expiration" is deleted in its entirety and is replaced by a new paragraph 10.D. to read as follows:

10.D.  Expiration.

(1)  Upon the expiration of the lease term in paragraph 10.A, the Airports Authority covenants and agrees that it will give up, surrender and deliver to the Secretary all Leased Premises then subject to the lease term in that paragraph, together with all buildings, structures and improvements thereon (as the same may be altered or replaced), as well as all personal property, furniture, fixtures and other equipment contained therein and used exclusively in connection with the operation of the

Airports, the intent being that when such Leased Premises are returned to the Secretary, they shall be in good condition as operating airports, depreciation, obsolescence, and ordinary wear and tear excepted, all of which shall be free and clear of any and all liens, debts or encumbrances which would necessitate payment by the Secretary.

(2)    As to any segment of the Dulles or National Lease Land subject to a lease term that has been extended by the Secretary, pursuant to paragraph 10.B.(3), beyond the term set out paragraph 10.A., the Airports Authority covenants and agrees as follows: (i) it will give up, surrender and deliver, or will cause the giving up, surrender and delivery of, such segment to the Secretary upon expiration of the segment's extended lease term, with the surrender and delivery being done in the same manner required of the Airports Authority, and subject to the same conditions applicable to it, under subparagraph (1); and (ii) in any sublease it issues for such a segment, the Airports Authority will require the sublessee to covenant and agree that it will give up, surrender and deliver the segment to the Authority or, if applicable, to the Secretary upon the expiration of the sublease term and will do so in the same manner required of, and subject to the same conditions applicable to, the Airports Authority under subparagraph (1).

8.    In Article 11, <u>Continuing Obligations</u>, paragraph 11.K. "Assumptions of Rights, Liabilities, and Obligations" is amended by deleting its final two sentences and, as amended, reads as follows:

11.K    <u>Assumptions of Rights, Liabilities, and Obligations</u>.

The Authority shall adopt, maintain, and adhere to policies and procedures in the areas of procurement and contracting, human resources (including hiring and adverse action), budget (as relates to federal funds), travel, ethics, governance, and transparency (including open meetings and executive sessions). These policies and procedures should be substantially similar to those of similar public entities and should strive to reflect a standard of "best practices." The Authority shall develop these policies and procedures, and any revisions thereto, in consultation with the Secretary of Transportation or the Secretary's designee. Prior to the adoption of such policies and procedures, or revisions, the Authority shall obtain the concurrence of the Secretary or the Secretary's designee.

9.    All other provisions of the Lease, as amended, shall remain unchanged.

[Signatures on following pages]

ENTERED INTO THIS _24_ DAY OF _APRIL_, 2028.4

For the United States of America:

For the Metropolitan Washington
Airports Authority

_____
Pete Buttigieg
Secretary of Transportation

_____
William E. Sudow
Chairman, Board of Directors

_____
John E. Potter
President and CEO

Metropolitan Washington Airports Lease
Amendment No. 5
Page 6 of 7

Amendment No. 5 to the Lease of the Metropolitan Washington Airports
between the United States of America, acting by and through the Secretary of Transportation,
and the Metropolitan Washington Airports Authority

APPROVED, pursuant to section 3, chapter 598, Virginia Acts of Assembly,
1985 Session, as amended:

The Honorable Glenn Youngkin
Governor of Virginia

APPROVED, pursuant to section 4 of D.C. Law 6-67, as amended:

The Honorable Muriel Bowser
Mayor of the District of Columbia

Metropolitan Washington Airports Lease
Amendment No. 5
Page 7 of 7

Amendment No. 5 to the Lease of the Metropolitan Washington Airports
between the United States of America, acting by and through the Secretary of Transportation,
and the Metropolitan Washington Airports Authority

APPROVED, pursuant to section 3, chapter 598, Virginia Acts of Assembly,
1985 Session, as amended:


_____

The Honorable Glenn Youngkin
Governor of Virginia


APPROVED, pursuant to section 4 of D.C. Law 6-67, as amended:


The Honorable Muriel Bowser
Mayor of the District of Columbia


Metropolitan Washington Airports Lease
Amendment No. 5
Page 7 of 7