Aron C. Beezley
abeezley@bradley.com
202.719.8254 direct



April 17, 2025

<u>*VIA hand delivery to the Authority's Procurement & Contracts Department; certified mail, return receipt requested; and email.*</u>

Ms. Felice Smith
Vice President and Secretary, Board of Directors
Metropolitan Washington Airports Authority
2733 Crystal Drive,
Arlington VA 22202

   **RE:**   <u>**Solicitation No. RFP-23-21311**</u>

   **SUBJ:**   <u>**Review of Protest of The Private Suite IAD, LLC (dba PS)**</u>

Dear Ms. Smith:

  The Private Suite IAD, LLC (dba PS) ("PS"), by and through the undersigned counsel, hereby respectfully files this timely Request for Review of the protest regarding the Metropolitan Washington Airports Authority's ("MWAA") evaluation of proposals under Solicitation No. RFP-23-21311 (the "RFP") and intended award of the Contract thereunder to daa International ("DAAI").  As discussed below, MWAA wrongfully conducted this procurement by failing to account for the RFP's latent defects, unreasonably evaluating DAAI's technical and price proposals, applying unstated evaluation criteria, and engaging in disparate treatment of the offerors, all of which contributed to an erroneous best-value procurement decision.  By failing to adequately address each of these unreasonable and unlawful actions by the Authority, the various protest decisions regarding the RFP insufficiently address those procurement missteps.[1]  Accordingly, the MWAA Board of Directors (the "Board") should reverse the VP-OSCM, Julia.

---

[1] Although this Appeal does not rehash each issue under protest, PS incorporates by reference the entirety of each of its previous filings for context and appellate review by the MWAA Board of Directors.

**CONTAINS PROTESTER'S PROPRIETARY INFORMATION – NOT FOR PUBLIC RELEASE**

1

Hodge's, March 10 decision denying the protest (the "Initial Denial"), the VP-OSCM's April 9 decision refusing to recognize PS's supplemental protest grounds (the "Supplemental Denial"), and the April 10 decision by MWAA President and Chief Executive Officer, John Potter, upholding Ms. Hodge's decisions (the "CEO Response").  PS files this final administrative appeal in order to exhaust its administrative remedies before exploring judicial options.

I.  **Threshold Matters**

    a.  **This Request for Review is Timely Filed.**

Pursuant to the CEO Response, Page 3, and Chapter 9.5 of MWAA's Contracting Manual, Revised Fifth Edition (5.2) ("Contracting Manual"), a protester may seek the Board of Directors' review of a protest within seven (7) days of the date of the CEO's response letter.  Here, the CEO dated his response letter to PS's protest appeal April 10, 2025 and delivered it to PS's counsel that day.  This request is submitted within seven days of that date and, therefore, is timely.[2]  Similarly, although the Supplemental Decision was issued April 9, 2025, Ms. Hodge failed to provide PS the opportunity for review by the CEO.  Nevertheless, Mr. Potter addressed the Supplemental Decision in the April 10, 2025 CEO Response.  Thus, this appeal to the Board includes a timely response to both the Supplemental Denial and the CEO's review of that denial contained within the CEO Response.

    b.  **The Authority Must Not Award the Contract During the Pendency of this Request.**

Any actions to award the Remote VIP contract should be stayed.  Pursuant to Section 21 of the RFP, "[i]f a Contract has not been awarded at the time a protest is timely filed, the Contract may not be awarded while the protest is pending, unless the President and CEO

---

[2] Mr. Potter's Decision refers to a seven (7) **business** day deadline to submit this request.  Out of an abundance of caution, PS submits its request within seven (7) calendar days as suggested by the Contracting Manual.

**CONTAINS PROTESTER'S PROPRIETARY INFORMATION – NOT FOR PUBLIC RELEASE**

determines that award of the Contract, and, if applicable, issuance of a notice to proceed, is in the Authority's best interest." RFP at 20; *see also* Cont. Manual, § 9.6. The Contracting Manual specifically includes this review mechanism as part of the protest process, and notes that a decision is final only after the CEO, or the MWAA Board where applicable, issues a decision. Cont. Manual, § 9.5. Here, a review by the MWAA Board is applicable. *See* CEO Response at 3. Therefore, the protest remains pending, and the Contract may not be awarded. Exhibit 1 at 20; *see also* Cont. Manual, § 9.6.

II. <u>Discussion</u>

   a. **<u>MWAA Conducted a Flawed Solicitation, and the Initial Decision Failed to Address Those Flaws.</u>**

While the previous filings contain detailed analysis of the RFP and grounds for denial, this filing aims to provide a top-line identification of the flaws in the procurement process. As indicated in PS's initial protest filing, MWAA misevaluated both PS and DAAI's proposals, and in doing so, wrongfully credited DAAI where it fell short of the RFP requirements and wrongfully penalized PS where it excelled. The chart below identifies key differences between the respective proposals compared to the RFP requirements and the Authority's several evaluation errors related to those differences:

| Requirement | PS | DAAI | Notes |
|---|---|---|---|
| **1. Experience Operating Remote VIP Services with TSA Screening & Direct Aircraft Access** | ✓ Met – Cited LAX facility meeting all criteria. ATL operational at time of proposal, Miami & DFW awarded but not operational. | ✗ Did not meet as entity – DAAI lacked such experience; relied on parent company daa's experience at Dublin Airport. | In its debriefing, MWAA confirmed it evaluated DAAI's parent company experience, despite it being an unstated evaluation criterion. |
| **2. Experience Operating Remote VIP Services** | ✓ Met – LAX facility is located separate and apart from main terminal. | ✗ Did not meet – DAA's (not DAAI) Platinum Services is | |

CONTAINS PROTESTER'S PROPRIETARY INFORMATION – NOT FOR PUBLIC RELEASE

| Requirement | PS | DAAI | Notes |
|---|---|---|---|
| | | located within the main terminal complex of Dublin Airport, connected to Terminal 1. | |
| 3. Secure Remote Parking | ☑ Met – LAX facility contains secure, remote parking. | ✘ Did not meet – DAAI's Platinum Services vehicles are dropped off at Platinum Services but are then relocated to a nearby public parking lot. | |
| 4. Departing passenger screening within the facility in accordance with TSA requirements and then taken under escort by a driver and security detail via a waiting automobile to the terminal gate of the commercial aircraft. | ☑ Met – PS does exactly this for all airlines at LAX and ATL and will do for DFW and MIA. | ✘ Did not meet – DAAI's Platinum Services has no TSA screening "within the facility" and cannot drive USA-destination passengers "direct to the terminal gate of the commercial aircraft. | |
| 5. Evaluation Limited to Offeror (Not Parent Company) | ☑ Interpreted "Offeror" literally; did not include parent company. | ✘ Cited parent company experience (daa) and unnamed subcontractors. | MWAA admitted use of parent company experience, contradicting the stated criteria. |
| 6. Financial Capacity / Cash Flow | ☑ Submitted reasonable and attainable financials for PS only. Financials based on actual performance of PS locations in US markets. | ✘ Submitted overestimated financials for daa (the parent company). Financials based on hypothetical projections and European market. | MWAA accepted parent company's financials, despite unclear guidance in RFP. |
| 7. Proposed Offering & Marketing Plan | ☑ Provided a clear marketing and operations plan. | ☑ Included international marketing via parent. | DAAI credited with broader scope by |

**CONTAINS PROTESTER'S PROPRIETARY INFORMATION – NOT FOR PUBLIC RELEASE**

| Requirement | PS | DAAI | Notes |
|---|---|---|---|
|  |  |  | leveraging daa's international reach. |
| 8. Agreements with TSA, CBP, Airlines | ☑ Existing agreements demonstrated; PS had TSA agreements already in place for LAX and ATL and has been working through the process with TSA for DFW and MIA. It was PS who lobbied congress to create the Reimbursable Screening Services Program (RSSP). It did not exist before PS. PS has agreements in place with CBP for LAX, ATL, MIA, and DFW. PS also has approvals for JFK and EWR. | ✗ Experience indirect—through daa's subcontractors only. | DAAI's CBP/TSA experience was overstated or misattributed—there is no TSA/CBP station located in Dublin's Platinum Services |
| 9. Evaluation of Past Performance | ✗ MWAA only credited LAX experience; discounted ATL, DFW, MIA. | ☑ DAAI credited for daa's past airport ops experience. | MWAA rated PS only "Acceptable" despite superior direct experience. |
| 10. Equal Treatment of Offerors | ✗ Treated inconsistently—held to narrower standard. | ☑ Treated favorably—allowed broader interpretation. | Key ground for protest (unequal evaluation & unstated criteria). |
| 11. Compliance with "Best Value" Procurement Method | ✗ MWAA failed to follow best value by ignoring technical superiority. | ✗ DAAI's proposal contained unrealistic financials; technical proposal bolstered by non-offeror entities. | MWAA's flawed best-value assessment favored DAAI without justification. |

The takeaway is clear: PS met the terms of the RFP, while DAAI did not. But while PS provided a technically superior proposal, MWAA gave both offerors a "Good" technical rating. Conducting such an unreasonable procurement not only prejudiced PS, but also robbed MWAA of a superior product. Purportedly, MWAA offset any discrepancy between the technical proposals by relying heavily on DAAI's proffered price. But DAAI provided the Authority with

**CONTAINS PROTESTER'S PROPRIETARY INFORMATION – NOT FOR PUBLIC RELEASE**

an aggressively optimistic, deceptively generous but ultimately unfounded financial offer. Accepting an offer based on questionable inputs surely represents a procurement evaluation flaw, but, more importantly, it represents an unacceptable risk to the financial health of MWAA. The Authority's reliance on unattainable financial projections could cause significant consequences regarding future financial planning.

Both the Initial Denial and the CEO's Response fail to adequately address the flaws within the procurement procedure and the flaws with DAAI's proposal. In doing so, those responses also fail to address the collateral consequences of such a flawed evaluation. The Board should review the Initial Denial and the CEO's response not only through the lens of whether MWAA conducted its procurement according to the terms of the RFP and the rules of the Contracting Manual (which it did not), but also with a view of the purpose behind those terms and rules—*i.e.*, with a consideration that the failures in process may lead to MWAA acquiring a worse contract.

b.  **Supplemental Denial.**

The Supplemental Denial, issued on April 9, 2025 and reviewed by the CEO in the April 10, 2025 CEO Response, gave short shrift to PS's additional protest grounds. Such treatment was improper. The Supplemental Denial made two overarching points: that there are no such things as "supplemental protests" based on the Contracting Manual, and that a debriefing could not, in any event, form the basis of additional grounds. These points are unsupported.

First, while the Contracting Manual does not specifically mention the term "supplemental protest" or a similar term, *see generally*, Cont. Manual, the Contracting Manual does not prohibit supplemental protests—in fact, it implicitly contemplates them. The Contracting Manual, § 9.2.2, states, "Protests that are based on the manner in which Offers were evaluated or on

CONTAINS PROTESTER'S PROPRIETARY INFORMATION – NOT FOR PUBLIC RELEASE

which a Contract was awarded may only be made by an Offeror who submitted an Offer and must be received no later than seven (7) Days after the Offeror *knew or should have known the basis* for the protest." *Id*. (emphasis added).  The Supplemental Denial suggests that this means PS "knew or should have known" the *basis* for its denial on February 7, 2025—*i.e.*, the date MWAA notified PS it was an unsuccessful offeror.  Suppl. Den. at 1.  But that notice contained nothing more than a notification that MWAA intended to award the RFP to DAAI.  In its entirety, the notification contained only the following:



Initial Protest, Exhibit 4.  Plainly, the notice contained nothing regarding the *basis* for why MWAA selected DAAI over PS.  Therefore, PS did not know, nor should it have known, the basis for MWAA's decision until MWAA released further information.  The Supplemental Denial's suggestion that PS was immediately on notice following the notice of unsuccessful offer of any and all potential bases for flaws in the evaluation runs counter to the plain language of the Contracting Manual and common sense.

PS learned additional grounds for protest during its March 26, 2025 debriefing. It did not know those grounds before that date, and because MWAA had not shared those grounds previously, it could not, and should not, have known those grounds before that date. As such, PS timely submitted an additional protest which highlighted the new information it recently learned. The fact that MWAA's protest procedures allow for a debriefing or production of solicitation materials via a freedom of information request significantly later than the notice of unsuccessful offer represents a critical flaw in its procurement policies that will continue to present issues during future protests of MWAA procurements. *See e.g.*, March 17, 2025 Protest Appeal at 3-5 (discussing flaws in MWAA's protest procedure). But in relation to this protest, the flaws in that process do not change the stated guidance of the Contracting Manual, which allows protests after an offeror knew or should have known the basis for a protest. Because PS did not know the basis for the supplemental protest grounds until its March 26, 2025 debriefing, MWAA was wrong to deny the protest and inadequately review those grounds.

Second, the Supplemental Denial suggests PS improperly used the debriefing to identify protest grounds. *See* Suppl. Den. at 1-2. MWAA correctly pointed out that the Contracting Manual identifies that debriefings will be "concentrated on the Offeror being debriefed." Suppl. Den. at 2. The Contracting Manual states:

> Concentration will be on the Offeror being debriefed, its submittal, and when appropriate, a general description of the basis for the Authority's selection decision. The debriefing will address the strengths and weaknesses of the unsuccessful Offeror as related to the evaluation criteria in the Solicitation.

Cont. Manual, § 4.7. But contrary to what the Supplemental Denial said, PS based its supplemental protest on those exact grounds. *See* Suppl. Protest at 6 ("[D]espite MWAA's inability to discuss DAAI's proposal or the ongoing protest documents, its discussions ***about PS's proposal*** and ***how MWAA evaluated*** PS's proposal still shed light on elements of the

CONTAINS PROTESTER'S PROPRIETARY INFORMATION – NOT FOR PUBLIC RELEASE

Protest….") (emphasis added).  PS's supplemental protest addressed how MWAA evaluated its proposal compared to the RFP.  The fact that those revelations also necessarily implicated how MWAA evaluated DAAI fail to make PS's protest grounds illegitimate.  Furthermore, the Contracting Manual states that debriefings "will *concentrate* on information that can be of benefit without revealing any sensitive or proprietary data regarding other Offerors."  Cont. Manual, § 4.7.  But the Contracting Manual does not state that information regarding other offerors is completely off-limits.  *See id*.  Any discussion of an unsuccessful offeror necessarily contains some reference to the successful offeror.  Therefore, MWAA was wrong to dismiss PS's supplemental protest based on the content of its debriefing.

Lastly, the CEO Response reviewed and endorsed these points in its April 10, 2025 response.  CEO Response at 2.  That analysis relies on the exact same legal reasoning and fails for the same reasons.  In sum, MWAA wrongly interpreted the Contracting Manual to deny effective review of PS's supplemental protest grounds.  The plain language of the Contracting Manual allows for protests within seven (7) days of the date the bases for protests were known or should have been known.  Attempts to limit that initiating event to the notice of unsuccessful offeror or to prevent the contents of a debriefing or records request from being included as a basis for a protest run counter to MWAA's own guidance, established public procurement law, and principles of basic fairness.  As such, the Board should review and consider PS's supplemental protest grounds as valid and timely.

c. **CEO's Response.**

The CEO Response, issued on April 10, 2025, failed to adequately address PS's valid protest grounds.  As indicated above, rather than re-hash each of the underlying protest grounds,

**CONTAINS PROTESTER'S PROPRIETARY INFORMATION – NOT FOR PUBLIC RELEASE**

PS draws the Board's attention to the previous protest filings and highlights three crucial flaws in the underlying logic of the CEO Response.

First, the CEO Response highlights the provision in MWAA's Contracting Manual indicating that the Authority is not bound by the FAR, GAO caselaw, or other laws that govern federal procurement. *See* Cont. Manual, § 1.7; CEO Response at 2. But PS never suggested MWAA was bound by relevant FAR clauses or GAO caselaw. Rather, PS highlighted similar, relevant public procurement law as examples to inform MWAA of typical protest and procurement procedures. *See* Initial Protest at 18 ("While the Contract Manual indicates that it, and not federal procurement law, governs this MWAA bid protest, analogous federal law … inform[s] an analysis of the principles of fair competition in similar situations.").

Furthermore, while MWAA may not be bound by those laws, *per se*, MWAA's Enabling Act, 49 U.S.C. § 49101 *et seq.*, requires MWAA's governing lease to include certain provisions governing MWAA's operation of the airports, including a provision that states "[i]n acquiring by contract supplies or services for an amount estimated to be more than $200,000, or awarding concession contracts, the Airports Authority to the maximum extent practicable shall obtain complete and open competition through the use of published competitive procedures." *Id.* § 49104(a)(4). The Enabling Act further requires that MWAA's contracts be "awarded by procedures that follow sound Government contracting principles." *See* 49 U.S.C. § 49106(g). This contract is a concession contract estimated to be more than $200,000, and therefore requires sound government contracting principles. Those government contracting principles are necessarily informed by relevant other laws and decisions, including examples from the GAO caselaw and the FAR. Therefore, those references can, and should, inform MWAA's procurement process and decisionmaking.

**CONTAINS PROTESTER'S PROPRIETARY INFORMATION – NOT FOR PUBLIC RELEASE**
10

Second, MWAA was wrong to reduce the Best-Value decision to one based on price. Both the CEO Response and the Supplemental Denial identified that the evaluators awarded both DAAI and PS a "Good" rating for their overall technical proposals. CEO Response at 3. However, that reductive statement oversimplifies the comparative variance in quality between the proposals. *See*, Section II.a, supra; *see generally* Initial Protest. Characterizing both technical proposals as merely "Good," without considering the actual details within those proposals fails to provide a comprehensive review of the proposals, and dilutes the analysis made by the MWAA selection team regarding each offeror's technical proposal. Further, reducing both proposals to "Good" essentially turns a best-value procurement into an evaluation based wholly on price, ignoring the multifaceted reality of this procurement. *See e.g.*, *Cadre5, LLC*, B-422616, Aug. 28, 2024, 2024 CPD ¶ 204 at *8 ("[A]gencies may not base their selection decisions on adjectival ratings alone, as such ratings serve only as guides to intelligent decision-making; source selection officials are required to consider the underlying bases for ratings, including the advantages and disadvantages associated with the specific content of competing quotations."); *Mil-Mar Century Corp. v. United States*, 111 Fed. Cl. 508, 553 (2013) ("When assessing differences between proposals, the SSA should take into consideration not only the proposals' adjectival ratings but also information on advantages and disadvantages of the proposals. Looking beyond the adjectival ratings is necessary because proposals with the same adjectival ratings are not necessarily of equal quality."). Therefore, limiting the solicitation evaluation to price alone ignores the required "best-value" element of this proposal, and risks a procurement decision based entirely on price instead of substance.

Lastly, the CEO Response notes that PS included a reference to its parent company, Groupe ADP, as part of its financial proposal. CEO Response at 2. PS did include that

**CONTAINS PROTESTER'S PROPRIETARY INFORMATION – NOT FOR PUBLIC RELEASE**
11

reference, but only in the context of demonstrating PS's robust financial support. What PS did not do, and what was the subject of PS's protest grounds, was use Groupe ADP's experience as its own when submitting its technical proposal as examples of its own experience and capabilities, as DAAI did with its parent and affiliated companies. *See e.g.*, Protest Appeal at 9-14 (highlighting the consequences and unfairness of DAAI's proposal including its parent company and tangentially related subcontractors). MWAA's attempt to equivocate a limited reference to PS's corporate structure with DAAI's wholesale adoption of the experience of its parent company and other related entities mischaracterizes PS's protest grounds and seeks to ignore the substantive issues and latent defects within the RFP and MWAA's evaluation thereof.

In conclusion, the CEO Response failed to adequately address PS's protest grounds and wrongfully relied on easily rebuttable legal principles to do so. The Board should consider the full scope of PS's protest grounds, and its legal justification, during its review of the protest filings.

### III.    Conclusion

Based on the foregoing, the Authority's Decision to deny the Protest, deny the Supplemental Protest, and the CEO's Response upholding those decisions, as well as MWAA's underlying evaluation of proposals and stated intention to award the Contract to DAAI, was unreasonable and unlawful in multiple material respects and has caused, and will continue to cause, undeniable prejudice to PS. Accordingly, PS respectfully requests a ruling from the Board that:

1. Reverses in its entirety the VP-OSCM's Decision to Deny PS's Protest, Supplemental Protest, and the CEO Response;

2. If applicable, cancels, stays, or rescinds any award of the Remote VIP Services contract;

CONTAINS PROTESTER'S PROPRIETARY INFORMATION – NOT FOR PUBLIC RELEASE

3. Recommends that the Authority take corrective action, including but not limited to cancelling the intended award, revising the RFP, and reissuing the revised RFP for further competition;

4. Grants such other relief and remedies as the Board determines to be just and equitable.

Respectfully submitted,

*/s/ Aron C. Beezley*

Aron C. Beezley
Nathaniel J. Greeson
Charles F. Blanchard
Winni Zhang

*Counsel for The Private Suite IAD, LLC (dba PS)*

**CONTAINS PROTESTER'S PROPRIETARY INFORMATION – NOT FOR PUBLIC RELEASE**