**Metropolitan Washington Airports Authority**
1 Aviation Circle
Washington, DC 20001-6000



December 8, 2025

Aron C. Beezley
Bradley Arant Boult Cummings LLP
1615 L Street, NW, Suite 20036
Washington, DC 20036
abeezley@bradley.com

RE:   Private Suite IAD, LLC's Pre-Award Protest of Metropolitan Washington Airports Authority Solicitation No. RFP-25-24520, Remote VIP Services Facility, IAD

Dear Mr. Beezley:

    The Metropolitan Washington Airports Authority ("Airports Authority") is in receipt of Private Suite IAD, LLC's ("PS") November 25, 2025, protest ("Protest"), which challenges the terms and conditions of Solicitation No. RFP-25-24520 ("Solicitation") for Remote VIP Passenger Services at IAD and specifically Amendment Number 2 ("Amendment 2") to the Solicitation.  PS challenges Amendment 2's removal of language in the Solicitation's Attachment 01, Evaluation Criteria and Technical Proposal Submission Requirements, that the Airports Authority would evaluate price "for reasonableness, completeness, and realism."  Protest at 1.  For the reasons that follow, PS's Protest is dismissed in part and denied in part.

    I.    <u>Background</u>

    On September 26, 2025, the Airports Authority released the Solicitation.  As relevant here, the Solicitation's Attachment 01 is entitled, "Evaluation Criteria and Technical Proposal Submission Requirements."  Section 02 B. described the Airports Authority's "Financial Offer Evaluation," and stated, "The Airports Authority will evaluate financial offers for reasonableness, completeness, and realism as appropriate."  Att. 01 at 2.

    On November 12, 2025, the Airports Authority issued Amendment 2 to the Solicitation.  Among other changes, Amendment 2 amended the Solicitation's Attachment 01 Evaluation Criteria and Technical Proposal Submission Requirements to delete Section 02 B. Financial Offer Evaluation and replace it with, "The Airports Authority will evaluate the completeness of a financial offer by determining whether it is complete and responsive to the requirements set forth in the Solicitation."

    The deadline for proposal submissions was December 5, 2025 at 2:00 PM.  PS timely submitted a proposal.

Dulles International | Reagan National | Dulles Toll Road
mwaa.com

Protest of RFP-25-24520
Page 2

> II. <u>PS Fails to Raise Valid Protest Grounds or Otherwise Demonstrate That the Solicitation Fails to Comply with Applicable Law or the Airports Authority's Contracting Manual</u>

In accordance with the Airports Authority's Contracting Manual Revised Fifth Edition (5.3) ("Manual"), the Vice President, Office of Supply Chain Management will review protests that identify "errors or violations of this Manual or other law." Manual, § 9.3. Rather than identifying any legal defects, PS's Protest attempts to dictate how the Airports Authority should conduct its procurements. But any differences between how the Airports Authority chooses to conduct its procurements and PS's preferences do not amount to a violation of the Manual or applicable law. Furthermore, PS's lone claim that the Airports Authority did not comply with applicable law when it failed to employ "sound Government contracting principles" neglects to identify any applicable "sound Government contracting principles," let alone ones that the Airports Authority failed to apply. Accordingly, for the reasons discussed below, PS's Protest is dismissed in part and denied in part.

> A. <u>PS's Protest Allegations Fail to State Cognizable Protest Grounds</u>

PS's Protest alleges that Amendment 2 "eliminates one of MWAA's important risk evaluation tools," leads to "uneconomically high-priced proposals," and creates a "risk that a successful offeror who overpromises on its bid suddenly must underperform on its services to provide MWAA with the promised rent." Protest at 11-13. However, none of these allegations identify a violation of either the Manual or applicable law. *See* Manual, § 9.3. PS merely disagrees with the Airports Authority's selected procurement method. However, the Manual is clear: it is the Contracting Officer—and not potential offerors—who "must determine which procurement method is most advantageous to the Authority." Manual, § 3.1. Notwithstanding PS's allegations, the Contracting Officer properly exercised his discretion in selecting a procurement method for this Solicitation. Accordingly, PS's allegations are dismissed for failing to state a valid protest ground.

> B. <u>The Solicitation Complies with Applicable Law and Applies Sound Government Contracting Principles</u>

PS's Protest contends that 49 U.S.C. § 49106(g) requires the Airports Authority use "procedures that follow sound Government contracting principles." Protest at 13. According to PS, "sound Government contracting principles" must "[n]ecessarily" mean those set forth in the Federal Acquisition Regulation ("FAR") and, as applied to the Solicitation, those set forth in FAR part 15. Protest at 14.

Contrary to PS's contentions, the Contracting Officer applied sound Government contracting principles when selecting the highest price, technically acceptable ("HPTA") procurement method for the Solicitation. As the Manual states, "[t]he HPTA method is appropriate when selection of the technically acceptable proposal with the highest offered price is preferred (e.g., concessions Contracts)." Manual, § 3.5.2.1. When employing HPTA, the Manual requires "evaluation factors that establish the requirements of acceptability [to] be set forth in the Solicitation" and that award "be made on the basis of the . . . highest . . . price

Protest of RFP-25-24520
Page 3

proposals meeting or exceeding the applicability standards." *Id.* Amendment 2 is consistent with the Manual in that it evaluates offerors for compliance with the Solicitation's requirements for price to ensure that the offeror with the highest price is properly identified. *See* Solicitation, Amend. 2 at 1 ("The Airports Authority will evaluate the completeness of a financial offer by determining whether it is complete and responsive to the requirements set forth in the Solicitation."). Accordingly, the Solicitation applies sound Government contracting principles.

Moreover, PS's assertion that FAR part 15 constitutes "sound Government contracting principles" and should apply to the Solicitation is unpersuasive. Indeed, FAR part 15 does not address, and therefore does not set forth any "sound Government contracting principles" applicable to the Airports Authority's selected HPTA evaluation method. As such, PS has not demonstrated that the Airports Authority failed to implement sound Government contracting principles in violation of 49 U.S.C. § 49106(g). Accordingly, this protest ground is denied.

III.   Request for Documents

In its Protest, PS requested that the Airports Authority provide a list of seven (7) categories of documents and emails, subject to the provisions of the Solicitation's Freedom of Information Policy, the Airports Authority's Manual, and the Airports Authority's Freedom of Information Policy. However, none of these resources permit a formal request for the release of documents through the protest process. Instead, as stated in the Airports Authority's Freedom of Information Policy, formal requests for records must be submitted to the Freedom of Information Officer. *See* Airports Authority, *Freedom of Information Policy*, https://www.mwaa.com/sites/mwaa.com/files/legacyfiles/freedom_of_information_policy.pdf at 3. Accordingly, PS's request for documents is denied.

IV.   Conclusion

In accordance with the foregoing, the Airports Authority denies PS's requested relief. The Airports Authority appreciates PS's engagement in the procurement process and remains committed to conducting fair and competitive procurements.

If you are not satisfied with this response, you may request that the Airports Authority's President and Chief Executive Officer ("CEO"), Mr. John E. Potter, review the matter. Your request must be received by the CEO no later than seven (7) calendar days after the date of this letter. Please note that Mr. Potter's mailing address is 1 Aviation Circle, Washington, DC, 20001, and the address for hand delivery or overnight delivery is 2733 Crystal Drive, Arlington, Virginia, 22202.

Sincerely,

*Julia T. Hodge*

Julia T. Hodge
Vice President, Office of Supply Chain Management