**Metropolitan Washington Airports Authority**
1 Aviation Circle
Washington, DC 20001-6000



December 22, 2025

Via email - abeezley@bradley.com

Aron C. Beezley, Esq.
Bradley Arant Boult Cummings LLP
1900 K Street NW, Suite 800
Washington, DC 20036

RE:     Request for CEO Review — Solicitation No. RFP-25-24520 (Remote VIP Services Facility, IAD)

Dear Mr. Beezley:

This letter responds to Private Suite IAD, LLC's (PS) December 15, 2025 letter requesting review by the CEO (Appeal) of the Vice President, Office of Supply Chain Management's (OSCM) December 8, 2025 decision denying PS's pre-award protest (Protest) of Solicitation No. RFP-25-24520 (Solicitation).

In my consideration of PS's Appeal, I carefully reviewed the procurement record, the Solicitation, and the Appeal, and PS's November 25, 2025 Protest. Based on my review, I find no error or violation of the Contracting Manual or applicable law. Accordingly, I conclude that the OSCM Vice President's decision to deny your Protest was correct, and your Appeal is denied.

I. Background

On September 26, 2025, the Metropolitan Washington Airports Authority (Airports Authority) issued the Solicitation for Remote VIP Services at Washington Dulles International Airport. On November 12, 2025, the Airports Authority issued Amendment 2, which among other changes, revised Attachment 01 ("Evaluation Criteria and Technical Proposal Submission Requirements to replace the Financial Offer Evaluation language (reasonableness, completeness, and realism") with the following: "The Airports Authority will evaluate the completeness of a financial offer by determining whether it is complete and responsive to the requirements set forth in the Solicitation." Proposal submissions were due December 5, 2025, and PS timely submitted a proposal.

PS filed a Protest on November 25, 2025, challenging Amendment 2. On December 8, 2025, the OSCM Vice President dismissed the protest in part and denied it in part. PS appealed the decision and requested my review on December 15, 2025. PS's request for review is timely, in accordance with the Contracting Manual.

Aron C. Beezley, Esq.
Bradley Arant Boult Cummings LLP
Page 2

## II. PS's Appeal Does Not Identify Any Violation of the Contracting Manual or Applicable Law

PS's Appeal does not identify any specific provision of the Contracting Manual or applicable law that the Airports Authority violated by using the Highest Price Technically Acceptable (HPTA) method or by revising the financial-offer evaluation to consider only "completeness and responsiveness." Under the Airports Authority's Contracting Manual § 9.3 (Revised Fifth Edition), protests must identify "errors or violations of this Manual or other law." PS's Appeal reiterates its disagreement with Amendment 2 but does not demonstrate that the Solicitation violates the Contracting Manual or any applicable law.

The Contracting Officer – not potential offerors – "shall determine which procurement method is most advantageous to the Authority." Contracting Manual § 3.1. Additionally, the Airports Authority determines what evaluation criteria to consider when evaluating proposals. The Airports Authority properly exercised this discretion in selecting the HPTA method for this procurement and when stating how the Airports Authority will evaluate the financial offers. The OSCM Vice President's decision correctly dismissed allegations that merely reflect disagreement with the chosen evaluation methodology and evaluation criteria rather than a cognizable legal error. The Solicitation complied with § 1.2 of the Contracting Manual by ensuring meaningful competition, without restrictive specifications, and an award to a responsible contractor.

## III. MWAA Properly Selected the HPTA Method and Utilized Sound Government Contracting Principles

The Contracting Manual expressly identifies HPTA as appropriate "when selection of the technically acceptable proposal with the highest offered price is preferred (e.g., concessions Contracts)." Contracting Manual § 3.5.2.1. Under HPTA, an award is made on the basis of the highest price among technically acceptable proposals, and trade-offs are not permitted. *Id*.

PS contends Amendment 2 is arbitrary and capricious because it removes "reasonableness/realism" from the financial offer evaluation language. In an HPTA procurement for a revenue-generating opportunity, the Airports Authority's task is to: (1) define technical acceptability, (2) determine whether proposals meet those acceptability requirements, and (3) select the highest price among those technically acceptable proposals. Amendment 2 aligns with this framework by requiring evaluation of financial offers for completeness and responsiveness to the Solicitation's requirements. This ensures that the highest conforming offer can be identified among technically acceptable proposals. This approach is not arbitrary; it is the HPTA approach contemplated by the Contracting Manual. The Airports Authority complies with 49 U.S.C. §§ 49104(a)(4) and 49106(g) by conducting competitive procurements under its Contracting Manual, which embodies sound government contracting principles tailored to the Airports Authority's statutory framework. Evaluating completeness and responsiveness ensures proposals are comparable and enforceable, preventing speculative or non-compliant offers.

Aron C. Beezley, Esq.
Bradley Arant Boult Cummings LLP
Page 3

PS cites FAR Parts 14 and 15, GAO's bid-protest rules (e.g., 4 C.F.R. § 21.3(d)), and various federal principles to argue that "reasonableness" and "realism" must be analyzed in every procurement. As noted, the Airports Authority is not subject to the FAR or GAO procedures; reliance on those sources is misplaced. *See* Contracting Manual § 1.7. Neither the FAR nor GAO caselaw applies to the Airports Authority procurements or protest handling. And PS points to no particular authority, other than the inapplicable FAR which applies only to acquisitions by the government of supplies or services with appropriated funds, to support that reasonableness and realism principles must apply to the Airports Authority's award of an HPTA contract for revenue-generating concessions.

Lastly, although PS argues that Amendment 2's removal of reasonableness and realism risks the Airports Authority receiving proposals based on "unpredictable and unimaginable numbers," thus resulting in an unreasonable proposal, PS overlooks Solicitation criteria that protects the Airports Authority's interests and reduces the likelihood that the Airports Authority will make an award to an Offeror based on unattainable financial figures. First, the Solicitation requires consideration of an Offeror's financial responsibility before award can be made to that Offeror. The Solicitation expressly warns that "[t]he fact that an Offeror … submits the highest Financial Offer does not automatically result in Contract award." Solicitation § V.18. Indeed, the Solicitation provides that "the Offeror's responsibility … must be considered." Solicitation § V.18. Accordingly, the evaluation criteria require that the awarded Offeror be "deem[ed] responsible in accordance with the Airports Authority Contracting Manual," Solicitation Attachment 01 at § 01.B. The Contracting Manual then provides that the Offeror "have the necessary … financial resources or the ability to obtain them to fulfill the terms of the Contract." Contracting Manual § 4.5.1; *id*. § 4.5.6 (sources to be reviewed in determining financial responsibility may include "business and credit rating services" or the "examination of financial statements and records"). Second, the Solicitation contains a Performance Guarantee based on the Offeror's financial offer, that is "subject to claim in full or part by the Airports Authority in the event of default by the Contractor or the Contractor's failure to fully perform the Contract." Solicitation § VI.4. These Solicitation provisions further support that Amendment 2's removal of the reasonableness and realism evaluations is neither arbitrary nor capricious.

The Airports Authority's approach under Amendment 2 is fully consistent with the Contracting Manual and the Solicitation's stated evaluation methodology. The HPTA method, expressly authorized for revenue-generating concessions (§ 3.5.2.1), prioritizes technical acceptability and highest price without trade-offs, while responsibility determinations (§ 4.5) and enforceable contractual safeguards—such as the Performance Guarantee (§ VI.4) and comprehensive insurance requirements (§ VI.5)—ensure that only financially capable and qualified offerors receive award. These measures collectively mitigate the risk of speculative or unrealistic offers and uphold sound government contracting principles under 49 U.S.C. §§ 49104(a)(4) and 49106(g). Accordingly, the removal of "reasonableness" and "realism" language does not compromise the integrity of the procurement; rather, it aligns the evaluation criteria with the

Aron C. Beezley, Esq.
Bradley Arant Boult Cummings LLP
Page 4

Airports Authority's statutory framework and policy objectives to maximize revenue while protecting performance.

    IV.  <u>PS's Additional Requests</u>

PS requests the Airports Authority stay the award and produce documents before continuing the protest process. As explained in the OSCM Vice President's December 8 decision, formal records requests must be submitted to the Freedom of Information ("FOI") Officer under the Airports Authority's Freedom of Information Policy. The FOI Officer will process PS's December 15 request consistent with policy and the Contracting Manual. Furthermore, The Airports Authority does not adopt GAO procedures and does not suspend protest resolution pending FOI outcomes.

    V.  <u>Conclusion</u>

After reviewing the procurement record, PS's Protest, the OSCM Vice President's decision, the Solicitation and its Amendment 2, and the Appeal, I find:

1. The Contracting Officer properly selected and applied the HPTA method for this procurement.
2. Amendment 2 appropriately aligned the financial-offer evaluation with the HPTA evaluation methodology.
3. PS has not demonstrated any error or violation of the Contracting Manual or applicable law.

In accordance with the foregoing, I conclude that the OSCM Vice President's decision to deny your Protest was correct, and your Appeal is denied.

If PS is not satisfied with this response, it may request review by the Airports Authority's Board of Directors. Any such request must be filed with the Board Secretary no later than seven (7) calendar days after the date of this letter. Mail to: Metropolitan Washington Airports Authority, Vice President and Secretary, Board of Directors, 1 Aviation Circle, Washington, DC 20001-6000; hand or overnight delivery to: 2733 Crystal Drive, Arlington, VA 22202.

    Sincerely,

    *[signature: Joe E. Potter]*

    John E. Potter
    President and Chief Executive Officer

JEP:ac