Metropolitan Washington
Airports Authority
1 Aviation Circle
Washington, DC 20001-6000



METROPOLITAN
WASHINGTON
AIRPORTS AUTHORITY

January 21, 2026

Via email – abeezley@bradley.com
Aron C. Beezley, Esq.
Bradley Arant Boult Cummings LLP
1900 K Street NW, Suite 800
Washington, DC 20036

RE:   Request for Board of Directors Review— Solicitation No. RFP-25-24520
      (Remote VIP Services Facility, IAD)

Dear Mr. Beezley:

This letter responds to Private Suite IAD, LLC's ("PS") December 29, 2025, Request for Review ("Request") by the Metropolitan Washington Airports Authority's ("Airports Authority") Board of Directors ("Board") protesting the terms of Solicitation No. RFP-25-24520 ("Solicitation") for Remote VIP Passenger Services at Washington Dulles International Airport ("IAD") and specifically to Amendment Number 2 ("Amendment 2") of the Solicitation. PS filed its initial protest on November 25, 2025, to the Vice President, Office of Supply Chain Management ("OSCM"). On December 8, 2025, the OSCM Vice President dismissed the protest in part and denied it in part. PS requested the Airports Authority's Chief Executive Officer ("CEO") review the dismissal and denial on December 15, 2025. The CEO conducted his review on December 22, 2025, and concluded the OSCM Vice President's decision was correct. PS timely filed the subject review to the Board. The Board considered PS's request for review at its January 21, 2026, Board meeting and voted to deny the protest.

Based on review of the procurement record, the Solicitation, and your Request for Board Review, the Board finds that your protest does not demonstrate any error or violation of the Contracting Manual or applicable law by the Airports Authority. Accordingly, your request that the Board reverse the OSCM Vice President's and CEO's decisions is denied.

Aron C. Beezley, Esq.
Bradley Arant Boult Cummings LLP
Page 2

I. <u>PS's Request for Board Review Does Not Identify Any Violation of the Contracting Manual or Applicable Law</u>

PS's Request for Board Review does not identify any provisions of the Contracting Manual or other law applicable to the Airports Authority that were violated by the Airports Authority's use of the Highest Price Technically Acceptable ("HPTA") method or Amendment 2's revision to the financial offer evaluation to consider only "completeness and responsiveness." Under the Airports Authority's Contracting Manual § 9.3 (Revised Fifth Edition), protests must identify "errors or violations of this Manual or other law."

Although PS reiterates in its Request that it has cited to 49 U.S.C. § 49106(g) and related portions of the Enabling Act, the Federal Acquisition Regulation ("FAR"), and the Contracting Manual, PS has not identified any violations thereof. None of the cited Contracting Manual provisions preclude the Airports Authority from evaluating financial offers received in response to the Solicitation under the HPTA method for "completeness and responsiveness," nor do they require an evaluation based on reasonableness and realism. Likewise, although PS has cited parts of the Enabling Act that require the Airports Authority to follow "sound Government contracting principles" (49 U.S.C. § 49106(g)) and to comport with the requirement to obtain "complete and open competition" (49 U.S.C. § 49104), PS has identified no violations of those laws in this procurement. PS alleges that the Airports Authority has failed to follow "sound Government principles", as outlined in the FAR, and Government Accountability Office ("GAO") bid protest rules. However, the Airports Authority complies with 49 U.S.C. §§ 49104(a)(4) and 49106(g) by conducting competitive procurements under its Contracting Manual, which embodies sound government contracting principles tailored to the Airports Authority's statutory framework.

Additionally, the CEO's decision correctly states that neither the FAR nor the GAO's bid protest rules are applicable to the Airports Authority. *See* Contracting Manual § 1.7; FAR 1.101 and 1.104 (FAR applies to acquisitions by executive agencies); *see also Johnson & Higgins of Wash., D.C., Inc.*, B-257302, May 23, 1994, 94-1 CPD ¶ 322 at 1–2 (the Airports Authority is not a federal agency subject to GAO's bid protest jurisdiction under the Competition in Contracting Act).

II. <u>The Airports Authority Properly Selected the HPTA Method and Utilized Sound Government Contracting Principles</u>

Aron C. Beezley, Esq.
Bradley Arant Boult Cummings LLP
Page 3

In its Request, PS states that "PS does not dispute the Airports Authority's discretion to choose HPTA as a solicitation method or specifically in this procurement; and PS does not protest the Airports Authority's decision to use HPTA as the basis for this Solicitation." Request for Board Review at 7. PS states that it instead "protests MWAA's decision to amend a procedurally acceptable HPTA Solicitation shortly before the proposal due date to materially change the financial proposal requirements to exclude requirements that proposal[s] be reasonable, complete, and realistic," Request for Board Review at 7, and that the Airports Authority "therefore violated the provisions of the Enabling Act and the Lease that require MWAA to issue contract awards 'by procedures that follow sound Government contracting principles.'" *Id.* at 8. PS's reframed allegations are unpersuasive.

The Airports Authority's decision to revise its financial offer evaluation criteria was not arbitrary or capricious. As the CEO's decision correctly states, under the Airports Authority's HPTA contracting method, the reasonableness and realism elements that were removed are not required to be evaluated, and it is within the Airports Authority's discretion to determine which procurement method, and which evaluation criteria, are most advantageous to the Authority. *See* Contracting Manual § 3.1.

Furthermore, removal of the reasonableness and realism evaluation criteria was not arbitrary or capricious given the other Solicitation criteria in place that protect the Airports Authority's interests and reduce the likelihood that the Airports Authority will make an award to an Offeror based on unattainable financial figures. These include an assessment to ensure, before award, that the Offeror is "responsible in accordance with the Airports Authority Contracting Manual" (Solicitation § V.18; Solicitation Attachment 01 at § 01.B), including a review to ensure that the Offeror has the necessary financial resources to perform. Contracting Manual §§ 4.5.1, 4.5.6. The Solicitation also contains a Performance Guarantee that is based on the Offeror's financial offer, "subject to claim in full or part by the Airports Authority in the event of default by the Contractor or the Contractor's failure to fully perform the Contract." Solicitation § VI.4. Although PS argues that these provisions are inadequate to fully protect the Airports Authority from unreasonable offers (Request for Board Review at 10), PS's argument amounts to mere disagreement with the Airports Authority's reasonable exercise of its discretion to determine which evaluation criteria are most advantageous to the Authority. The Airports Authority's approach under Amendment 2 is consistent with

Aron C. Beezley, Esq.
Bradley Arant Boult Cummings LLP
Page 4

the Contracting Manual and the Solicitation's stated evaluation methodology. Revising the financial offer criteria to evaluate completeness and responsiveness was reasonable and consistent with the HPTA contracting method and ensures that proposals are comparable and enforceable. PS does not show that the Airports Authority's exercise of this discretion was arbitrary or capricious.

Lastly, PS has identified no reason why the timing of Amendment 2 was arbitrary or capricious. Despite PS's complaint that Amendment 2 was issued "shortly before the proposal due date," in issuing Amendment 2, the Airports Authority extended the due date for proposals to December 5, 2025, providing offerors over three weeks to submit their revised proposals.

The Board concludes that in issuing Amendment 2, the Airports Authority complied with competition requirements and sound government contracting principles under 49 U.S.C. §§ 49104(a)(4) and 49106(g) by complying with its Contracting Manual and further concludes that the Airports Authority did not act arbitrarily or capriciously or in abuse of its discretion.

III. PS's Additional Requests Are Outside the Scope of This Review

PS's Request reiterates its request that the Airports Authority stay award and produce documents before continuing the protest process. As explained in the OSCM Vice President's December 8 decision, formal records requests must be submitted to the Freedom of Information Officer under the Airports Authority's Freedom of Information ("FOI") Policy. The FOI Officer processed PS's December 15 request consistent with policy and responded on January 13, 2026; thus, this Board review proceeds on the existing record. Furthermore, the Airports Authority does not adopt GAO or U.S. Court of Federal Claims procedures regarding the administrative record and does not suspend protest resolution pending FOI outcomes. Accordingly, PS's request to suspend protest resolution pending FOI outcomes is denied.

Aron C. Beezley, Esq.
Bradley Arant Boult Cummings LLP
Page 5

IV.   Conclusion

As a result, at the January 21, 2026, meeting, the Board voted to deny the Request for the reasons set forth herein and as set forth in the OSCM Vice President's and CEO's responses. In accordance with the Airport Authority's Contracting Manual, this decision of the Board is final.

Sincerely,

Mark Uncapher
Chairperson, Board of Directors