Aron C. Beezley
abeezley@bradley.com
202.719.8254 direct



December 29, 2025

<u>*VIA* HAND DELIVERY AND EMAIL</u>

Ms. Felice Smith
Vice President and Secretary, Board of Directors
Metropolitan Washington Airports Authority
2733 Crystal Drive,
Arlington VA 22202

      **RE:**      Solicitation No. RFP-25-24520

      **SUBJ:**      **Request for Review Regarding the Protest of The Private Suite IAD, LLC (dba PS)**

Dear Ms. Smith:

      The Private Suite IAD, LLC (dba PS) ("PS"), by and through the undersigned counsel, hereby respectfully files this timely Request for Review of the protest regarding the Metropolitan Washington Airports Authority's ("MWAA" or "the Authority") evaluation of proposals under Solicitation No. RFP-25-24520 (the "RFP"). As discussed below, MWAA wrongfully altered the terms of the Solicitation at the last minute, deviating from the Authority's legally sufficient Highest Price Technically Acceptable ("HPTA") solicitation by removing legally necessary (and logical) parameters designed to strengthen offers as reasonable, complete, and realistic. By failing to adequately address each of these unreasonable and unlawful actions by the Authority, the various previous protest decisions regarding the RFP insufficiently address those procurement missteps.[1] Accordingly, the MWAA Board of Directors (the "Board") should reverse the VP-OSCM, Julia Hodge's, December 8, 2025 decision denying the protest (the

---

[1] Although this Appeal does not rehash each issue under protest, PS incorporates by reference the entirety of each of its previous filings for context and appellate review by the MWAA Board of Directors.

**CONTAINS PROTESTER'S PROPRIETARY INFORMATION – NOT FOR PUBLIC RELEASE**

1

"Initial Decision") and the December 22, 2025 decision by MWAA President and Chief Executive Officer, John Potter, upholding Ms. Hodge's decision (the "CEO Review"). PS files this final administrative appeal in order to exhaust its administrative remedies before pursuing judicial review.

I. **Threshold Matters**

    a. **This Request for Review is Timely Filed.**

Pursuant to the CEO Response, Page 4, and Chapter 9.5 of MWAA's Contracting Manual, Revised Fifth Edition (5.3) ("Contracting Manual"), a protester may seek the Board of Directors' review of a protest within seven (7) days of the date of the CEO's response letter. Here, the CEO dated his response letter to PS's protest appeal December 22, 2025, and delivered it to PS's counsel that day. This request is submitted within seven days of that date and, therefore, is timely.

    b. **The Authority Must Not Award the Contract During the Pendency of this Request.**

Any actions to award the Remote VIP contract should be stayed. Pursuant to Section 19 of the RFP, "[i]f a Contract has not been awarded at the time a protest is timely filed, the Contract may not be awarded while the protest is pending, unless the President and CEO determines that award of the Contract, and, if applicable, issuance of a notice to proceed, is in the Authority's best interest." RFP at 15; *see also* Cont. Manual, § 9.6. The Contracting Manual specifically includes this review mechanism as part of the protest process, and notes that a decision is final only after the CEO, or the MWAA Board where applicable, issues a decision. Cont. Manual, § 9.5. Here, a review by the MWAA Board is applicable. *See* CEO Response at 4. Therefore, the protest remains pending, and the Contract may not be awarded. RFP at 15; *see also* Cont. Manual, § 9.6.

**CONTAINS PROTESTER'S PROPRIETARY INFORMATION – NOT FOR PUBLIC RELEASE**

      **c.**    **The Authority Should Complete PS's Records Request before Continuing the Protest or Procurement.**

PS submitted document requests regarding this matter, initially as part of its Protest and then formally on December 15, 2025 under the RFP's Freedom of Information Policy (the "FOIA Request"). PS reiterates that request here. Moreover, the Board should immediately produce the materials PS requested in its FOI request and Protest and should stay the protest procedure until such documents have been produced in order to prevent delays and save the expense of piecemeal protests. Delay in the production of documents pursuant to PS's request unnecessarily delays the protest process, unreasonably prejudices PS in its protest, and erodes the institutional trust in MWAA's ability to conduct an efficient and fair protest procedure.

Any withholding of the requested documents only serves to delay and extend this process. The Contracting Manual § 9.2.1 and the RFP § 19 each require an offeror to file a pre-award protest within fourteen (14) days of the date it knew or should have known of the basis for the protest. In the likely event that there are grounds for protest PS discovers within the documents it requested PS will have only seven (7) days to file ***another*** protest, and this protest and appeal process will restart ***again***. *See* Contracting Manual § 9.2.2. Thus, producing the relevant documents to PS according to MWAA's contracting rules would allow PS to consolidate its protest grounds into one document for MWAA's consideration. For the same reasons, MWAA's review of the Appeal should be stayed following the release of those documents in order to consolidate the Protest.

As indicated in PS's Appeal, typical protest procedures at the Federal, State, and Local levels provide for the production of documents before protest filing in order to deal with protest issues efficiently and fairly by issuing a single decision on the full record, allowing for a transparent and fair protest process that is also expedient. *See, e.g.*, 4 C.F.R. § 21.3(d). Other

**CONTAINS PROTESTER'S PROPRIETARY INFORMATION – NOT FOR PUBLIC RELEASE**

policies, such as protective orders, allow for the exchange of information in a manner that protects confidential or proprietary information.  *See e.g.*, 4 C.F.R. § 21.4.

The CEO Response tersely indicates that the "Authority does not adopt GAO procedures and does not suspend protest resolution pending FOI outcomes."  CEO Response at 4.  However, as noted above, the procedure by which an adjudicating authority reviews documents in a dispute is not specific to the GAO.  *See e.g.*, RCFC, Appendix C, Section VII (providing for creation of an administrative record in bid protest cases).  Rather, staggering production of, or even failing to produce, relevant documents delays the protest process; undermines Authority credibility; takes extra time, manpower, and attention; and delays the eventual award.  Appeal at 3; *see also* Manual, § 9.6.  Respectfully, the CEO should direct the Authority to release the requested documents before continuing this protest process.

## II.     Discussion

### a.     The CEO's Review Ignores PS's Obviously Identifiable Legal Arguments.

Like the Initial Decision before it, the CEO Review states that "PS's Appeal Does Not Identify Any Violation of the Contracting Manual or Applicable Law."  CEO Review at 2.  But this statement—as was the case with the essentially identical statement contained in the Initial Decision—is demonstrably untrue.  The CEO Response cites to the provisions of Contracting Manual § 9.3 requiring protests to identify "errors or violations of the Manual or other law" as if it were a condition precedent to maintaining a protest which PS failed to meet.  CEO Response at 2.  But PS obviously identifies specific provisions of the Contracting Manual, the Enabling Act[2]

---

[2] The Enabling Act established MWAA and delineated the relationship between the Authority and the federal government:

> MWAA was created by the District of Columbia and Virginia for the purpose of operating the two federally owned airports in the metropolitan area of the District of Columbia—Washington–Dulles International Airport and Ronald Reagan Washington National Airport.  Transfer of the operating responsibility for the airports to MWAA was authorized by the Metropolitan Washington Airports

**CONTAINS PROTESTER'S PROPRIETARY INFORMATION – NOT FOR PUBLIC RELEASE**

(49 U.S.C.A. §§ 49101-49112), and the lease between the federal government and MWAA (the "Lease"). *See e.g.*, Appeal at 4-5; Protest at 13-15.

PS's Appeal specifically identified the offending change in Amendment 2 as violating provisions of the Contracting Manual, the underlying applicable law, and analogous federal government statutes. *See e.g.*, Appeal at 4-5 (citing Contracting Manual §§ 1.2; 3.3.5; 3.4.4; 3.5.7.4; and 3.7; and FAR 15.404-1(a) and (d); Appeal at 5 (citing 49 U.S.C.A. § 49104; 49 U.S.C.A. § 49106); *see also* Protest at 13-15 (stating, "the change violates the law" and citing, *inter alia*, 49 U.S.C.A. § 49104 and 49 U.S.C.A. § 49106). The applicable law—namely, the Enabling Act—requires MWAA (via its Lease with the federal government) to follow "sound Government contracting principles" as identified in 49 U.S.C.A. § 49106(g) and "complete and open competition" as identified in 49 U.S.C.A. § 49104(a)(4). *See also Washington-Dulles Transp. Ltd. V. Metro. Washington Airports Auth.*, 87 F. App'x 843 at *1 (4th Cir. 2004). Those provisions are the "applicable law" the CEO Response claims are unidentified, and they are identified specifically, by statute and quotation, on pages 4 and 5 of the Appeal.

Furthermore, PS specifically identifies numerous Contracting Manual provisions which MWAA violated with Amendment 02. Appeal at 4 (quoting numerous MWAA procurement policy requirements included in Contracting Manual § 1.2). What is more, the CEO Response seems to acknowledge PS's argument on this point by specifically arguing that the procurement complied with Contracting Manual § 1.2, despite the preceding implication that PS failed to identify errors or violations of the Contracting Manual or the law. *See* CEO Response at 2. The

---

Act of 1986 (the "Enabling Act" or "Act") via a 50–year lease (the "Lease") between the federal government and MWAA.

*Washington-Dulles Transp. Ltd. V. Metro. Washington Airports Auth.*, 87 F. App'x 843 (4th Cir. 2004) (citing 49 U.S.C.A. §§ 49101–49112).

need to respond to an argument regarding violations of specific provisions of the Contracting Manual indicates that those specific provisions were, in fact, identified.

Furthermore, because those provisions require MWAA to follow "sound Government contracting principles" and because the Protest and Appeal argue that MWAA did not follow "sound Government contracting principles" when it issued Amendment 02, much of PS's submissions implicitly reference that applicable law. Thus, the "applicable law" which purportedly was not identified in either the Protest or Appeal exists throughout each of PS's previous submissions. Specifically, PS cites to the applicable law by citing to MWAA's violations of the Enabling Act in Section III. Appeal at 5. Thematically, the thrust of PS's argument is that MWAA failed to follow "sound government contracting principles" and "complete and open competition." In short, PS thoroughly identified violations of both the Contracting Manual and applicable law, and in doing so, rebuts the contentions of both the Initial Denial and CEO Response.

      b.    **The CEO Response Incorrectly Bases Its Conclusion on a Nonexistent Challenge to the HPTA Method.**

Both the CEO Response and the Initial Decision base their denials of PS's protest on a resolute defense of the Contracting Officer's discretion in choosing a Highest Price Technically Acceptable ("HPTA") as the basis of the award. In another protest perhaps, this would be a persuasive argument because the law and the Contracting Manual support that discretion, generally. *See e.g.*, Contracting Manual § 3.1 (The Contracting Officer "shall determine which procurement method is most advantageous to the Authority."). Here, however, there exists a fundamental flaw with that reasoning—this protest is not about MWAA's decision to use HPTA. In fact, PS explicitly indicated that it does not protest MWAA's decision to use HPTA. Appeal at 4 ("To be clear, PS ***does*** disagree with the Authority's selected procurement method, … ***but PS***

CONTAINS PROTESTER'S PROPRIETARY INFORMATION – NOT FOR PUBLIC RELEASE

***did not base its Protest on that disagreement***." (citing Protest at 11)) (emphasis added). MWAA appears to be unable to separate PS's business policy-based disagreement[3] regarding MWAA's use of HPTA for a remote VIP facility with the legal bases for its protest, which center around the changes in Amendment 2.

To be abundantly clear, PS ***does not dispute*** MWAA's discretion to choose HPTA as a solicitation method generally or specifically in this procurement; and PS ***does not protest*** MWAA's decision to use HPTA as the basis for this Solicitation. What PS ***does*** protest is MWAA's arbitrary and capricious decision to amend a procedurally acceptable HPTA Solicitation[4] shortly before the proposal due date to materially change the financial proposal requirements to exclude requirements that proposal be reasonable, complete, and realistic. *See* Appeal at 4; Protest at 1.

The CEO Response's characterization of PS's Protest and Appeal as one challenging the general decision to use HPTA for the Solicitation obfuscates PS's argument that only the change in Amendment 02 removing the requirement that price submissions be reasonable, complete, and realistic was unreasonable. Rather than challenge that MWAA was wrong to use HPTA, PS argues that Amendment 02 changed the requirements for technical acceptability and conformity with the Solicitation.

---

[3] *See* Protest at 8, fn 4 ("HPTA solicitations, by their very nature, reward proposals that minimally meet technical requirements. The fact that MWAA insists on treating a remote VIP terminal as a product that meets minimally acceptability is inappropriate for such a technically demanding and security-sensitive operation.").

[4] PS did not protest the initial 2025 HPTA Solicitation or its Amendment 01. Rather, PS engaged with (and continues to engage with) MWAA in good faith throughout the Solicitation process, including by attending pre-bid meetings and submitting a compliant proposal.

**CONTAINS PROTESTER'S PROPRIETARY INFORMATION – NOT FOR PUBLIC RELEASE**

c. **MWAA's Amendment 02 Substituted a Lawful Provision with an Unlawful Provision Regarding Price Proposals.**

The CEO Response, issued on December 22, 2025, failed to adequately address PS's valid protest grounds because it mischaracterized PS's arguments as attacking the selection of the HPTA rather than challenging an element of proposal compliance and technical acceptability. The CEO Response stated that the goals for an HPTA procurement are for the Authority to: "(1) define technical acceptability, (2) determine whether proposals meet those acceptability requirements, and (3) select the highest price among those technically acceptable proposals" and that Amendment 2 aligns with this framework by requiring evaluation of financial offers for completeness and responsiveness to the Solicitation's requirements." CEO Response at 2. The CEO Response goes on to suggest that because Amendment 02 requires completeness and responsiveness, the Solicitation meets those three goals and MWAA meets its obligations under the Enabling Act. *Id*. Again, however, the CEO Response misses the point.

PS's protest argument is not that Amendment 2 prevents MWAA from defining technical acceptability, determining whether proposals meet those requirements, and selecting the highest price among those proposals. Rather, PS's protest grounds allege that MWAA was arbitrary and capricious in how it "define[d] technical acceptability." *See id*. In other words, PS protests how MWAA enacted its approach, not that the approach itself was arbitrary. In that regard, PS's argument remains: MWAA's decision to substitute the requirements for financial proposals, late in the Solicitation process, to remove requirements for reasonableness and responsibility was arbitrary and capricious, and therefore violated the provisions of the Enabling Act and the Lease that require MWAA to issue contract awards "by procedures that follow sound Government contracting principles." *See* 49 U.S.C.A. § 49106(g). MWAA had established a valid HPTA solicitation when it issued the original RFP, but MWAA arbitrarily and capriciously changed the

**CONTAINS PROTESTER'S PROPRIETARY INFORMATION – NOT FOR PUBLIC RELEASE**

8

definition of technical acceptability when it changed the proposal requirements. In doing so, it erred.

The CEO Response highlights the provision in MWAA's Contracting Manual indicating that the Authority is not bound by the FAR, GAO caselaw, or other laws that govern federal procurement. *See* Cont. Manual, § 1.7; CEO Response at 3. But PS never suggested MWAA was bound by specific relevant FAR clauses or GAO caselaw. Rather, PS highlighted similar, relevant public procurement law as examples to inform MWAA of typical protest and procurement procedures:

> Again, the Decision mischaracterizes the Protest's invocation of FAR part 15. Where the Protest states (accurately) that "analogous federal law, including the Federal Acquisition Regulation ("FAR") and bid protest decisions issued by the U.S. Government Accountability Office ("GAO") and the U.S. Court of Federal Claims ("COFC"), informs any analysis of what constitutes "sound government contracting principles" and "complete and open competition" in similar situations," Protest at 14 (citing 49 U.S.C.A. § 49104(a)(4) and applicable caselaw), the Decision misconstrues the statement to suggest that FAR part 15 and not the Contracting Manual governs.

Appeal at 5; *see also* Appeal at 6 ("But that flawed conclusion conveniently ignores the rest of the Contracting Manual and the rest of generally accepted sound government contracting principles, from the FAR or any other source.").

And while MWAA may not be bound by those laws, *per se*, the Enabling Act requires MWAA's governing lease to include certain provisions governing MWAA's operation of the airports, including a provision that states "[i]n acquiring by contract supplies or services for an amount estimated to be more than $200,000, ***or awarding concession contracts***,[5] the Airports

---

[5] The CEO Response makes a similar argument as did the Initial Decision that because this is a concessions contract and the FAR does not directly reference concessions contracts, the FAR cannot be used to indicate support for what constitutes "sound Government contracting principles. *See* CEO Response at 3. Regardless of specific references in the FAR to concessions contracts, concessions contracts are explicitly referenced in the Enabling Act requirements for complete and open competition. 49 U.S.C.A. § 49104(a)(4). Furthermore, caselaw reinforces the commonsense conclusion that complete and open competition is required on concessions contracts, too. *See Washington-Dulles Transp. Ltd. V. Metro. Washington Airports Auth.*, 87 F. App'x 843 (4th Cir. 2004).

**CONTAINS PROTESTER'S PROPRIETARY INFORMATION – NOT FOR PUBLIC RELEASE**

Authority to the maximum extent practicable shall obtain complete and open competition through the use of published competitive procedures." 49 U.S.C.A. § 49104(a)(4) (emphasis added). Furthermore, MWAA is statutorily bound to conduct procurements by using "sound Government contracting principles"—*i.e.*, for those published competitive procedures to comply with "sound Government contracting principles." *See* 49 U.S.C.A. § 49106(g). Requiring price proposals devoid of reasonableness or realism does not comply with "sound Government contracting principles." Therefore, MWAA has violated its statutory requirement.

Lastly, the CEO Response identifies numerous elements of the Solicitation, unaffected by Amendment 02, that aim to prevent unreliable proposals. CEO Response at 3 (referencing Solicitation § V.18 (offeror responsibility); Solicitation Attachment 01 at § 01.B (offeror responsibility); and Contracting Manual § 4.5.1 and § 4.5.6 (offeror financial resources). The CEO Response also references the Performance Guarantee. *Id*. (citing Solicitation § VI.4.). Those provisions, while they do help protect MWAA from the risk of an unreasonable proposal, do so only obliquely. Being a responsible offeror requires an offeror to:

> (1) Regularly supply the goods or services offered. The Contracting Officer may, however, find a newly established entity responsible if it or its employees otherwise possess the necessary resources and experience to provide the goods or services.
> (2) Have the ability to comply with the required delivery or performance schedule, taking into consideration other business commitments.
> (3) Have a satisfactory record of performance.
> (4) Have a sound record of integrity and business ethics.
> (5) Have the necessary facilities, organization, experience, technical skills, and financial resources or the ability to obtain them to fulfill the terms of the Contract.
> (6) If applicable, be a legally-recognized joint venture.

Contracting Manual § 4.5.1.

Those requirements focus only on the offeror, not the offer, and do so as a threshold matter rather than an evaluation of the offer itself. Thus, a responsible offeror could still submit

**CONTAINS PROTESTER'S PROPRIETARY INFORMATION – NOT FOR PUBLIC RELEASE**

an unreasonable proposal.  Furthermore, neither the requirement that an offeror have the financial ability to perform nor the requirement for a guarantee analyze whether the offer itself is reasonable.  Without a reasonable or realistic offer, MWAA still faces the potential for an offeror to fail to perform and fail to make good on the guarantee, leaving MWAA on the hook for any revenue shortfall, replacement contractors, and the cost of recovering an uncertain amount on the guarantee.[6]  Because those provisions are inadequate to fully protect MWAA from unreasonable offers, their existence cannot overcome the Authority's arbitrary and capricious decision to eliminate those protections in the first place.

### III.     Conclusion

Based on the foregoing, the Authority's Decision to deny the Protest and the CEO's Response upholding that decision, as well as MWAA's underlying Solicitation, was unreasonable and unlawful in multiple material respects and has caused, and will continue to cause, undeniable prejudice to PS.  Accordingly, PS respectfully requests a ruling from the Board that:

1. Reverses in its entirety the VP-OSCM's Decision to deny PS's Protest and the CEO Response;

2. If applicable, cancels, stays, or rescinds any award of the Remote VIP Services contract;

3. Recommends that the Authority take corrective action, including but not limited to revising the RFP, and reissuing the revised RFP for further competition;

4. Grants such other relief and remedies as the Board determines to be just and equitable.

---

[6] *See also* the old adage: "If you owe the bank $100, that's your problem.  If you owe the bank $100 million, that's the bank's problem."— J Paul Getty.

**CONTAINS PROTESTER'S PROPRIETARY INFORMATION – NOT FOR PUBLIC RELEASE**

Respectfully submitted,

*/s/ Aron C. Beezley*

Aron C. Beezley
Nathaniel J. Greeson
Charles F. Blanchard

*Counsel for The Private Suite IAD, LLC (dba PS)*

**CONTAINS PROTESTER'S PROPRIETARY INFORMATION – NOT FOR PUBLIC RELEASE**