# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **The Private Suite IAD, LLC,** ) <br> ) <br> *Plaintiff,* ) <br> ) <br> v. ) <br> ) <br> **Metropolitan Washington Airports** ) <br> **Authority,** ) <br> ) <br> *Defendant.* ) <br> ) | Civil Case No. 1:26-cv-349 |

## DECLARATION OF ANDREW LINCOLN

Pursuant to 28 U.S.C. § 1746, I provide the following testimony based on my personal knowledge:

1. My name is Andrew Lincoln. I am the Vice President of Legal, *i.e.*, the general counsel, for The Private Suite, a company specializing in the design, construction, and operation of luxury private terminals at commercial airports.

2. The Private Suite's relevant corporate structure is as follows.

3. Extime PS, Inc. wholly owns Extime PS, LLC ("Extime").

4. Extime in turn wholly owns subsidiaries at each airport where Extime has a private terminal, is building a private terminal, or plans to seek a private terminal.

5. Among the wholly owned subsidiaries are The Private Suite IAD ("PS IAD") for Washington Dulles International Airport ("Dulles") and The Private Suite LAX ("PS LAX") for Los Angeles International Airport. There are several others as well, including in Dallas and Miami.

6. Therefore, Extime's business is identical to that of its subsidiaries, but just varies depending on the airport where the terminal or planned terminal exists.

1

7. PS IAD was formed as the entity that would be on the private terminal project currently being solicited by the Metropolitan Washington Airport Authority ("MWAA").

8. If PS IAD successfully wins the project, it will operate the terminal at Dulles.

9. PS IAD does not currently have any employees, but is instead run exclusively with personnel employed by Extime and PS LAX.

10. Extime and its subsidiaries (like PS IAD and PS LAX) operate together in tandem and feature significant, if not complete, overlap.

11. They share the same office address at 212 Eucalyptus Dr, El Segundo, CA 90245.

12. Extime and its subsidiaries, including PS IAD, feature the same leadership, including the same chief executive officer, chief financial officer, and other key leadership positions.

13. Extime's leadership collectively make decisions for all Extime subsidiaries, including PS IAD, including financial planning, competitive strategy, pricing, human resources, and legal matters.

14. I serve as general counsel for both Extime and its subsidiaries, including PS IAD, on all legal matters that arise for any of the entities.

15. None of Extime's subsidiaries, including PS IAD, has dedicated internal legal counsel of its own, nor do those entities hire outside legal counsel. Instead, myself and Extime's legal department handle all such matters for Extime and its subsidiaries, including PS IAD.

16. Extime and its subsidiaries, including PS IAD, also have a single, unified Human Resources department that services all entities. That HR Department handles all hiring, onboarding, training, payroll, benefits, discipline, and termination decisions for employees.

17. There is no practical or functional separation between the confidential and proprietary information of the Extime and its subsidiaries, including PS IAD. All are generated jointly by the same leadership and are accessible to Extime and its subsidiaries' executives, HR, finance, and legal departments.

18. I engaged Seyfarth Shaw LLP ("Seyfarth") in my capacity as general counsel for Extime and another subsidiary, PS LAX, in at least seven different matters.

19. I did not even execute a separate engagement letter for PS LAX.

20. Most of the matters are employment related, but one matter relates to a collective bargaining issue.

21. In that matter (and others), Seyfarth has received extensive and sensitive information regarding Extime and therefore necessarily about its subsidiaries, including PS IAD.

22. That information includes compensation data, personnel files, operational know-how, and many of the policies and procedures that Extime and its subsidiaries like PS IAD use or intends to implement at airports—including those like Dulles.

23. That information could directly advantage Seyfarth in its representation of MWAA in this matter, as that information informed PS IAD's proposal to MWAA regarding the private terminal at Dulles.

24. Damage to PS IAD in this matter will have a direct impact on Extime.

25. I cannot, in good faith and as general counsel for Extime and all its subsidiaries, repose trust in Seyfarth in those extant matters while opposing Seyfarth in this matter.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February _9_ th 2026.

*Drew Lincoln*
Andrew Lincoln